IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN., | § § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| GRANT STINCHFIELD, | § § | CIVIL ACTION NO. 3:19-CV-03016-X |
| Defendant. | § § § § § § § § | |

## DEFENDANT'S AMENDED ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT

Defendant Grant Stinchfield ("Stinchfield") submits this Answer to the Original Complaint (the "Complaint") filed by Plaintiff Ackerman McQueen ("Plaintiff" or "AMc"), wherein Stinchfield denies each and every allegation contained in the Complaint except as may be hereinafter admitted, qualified, or explained, and states and alleges as follows:

### I.   PRELIMINARY STATEMENT

Grant Stinchfield is a four-time Emmy Award winning investigative reporter who has never been sued for voicing the truth—until now. In another pending litigation,[1] Stinchfield provided truthful testimony regarding the corrupt business practices of his former employer, the disgraced advertising agency AMc. Unable to answer Stinchfield's testimony on its merits (let alone impeach his credibility), AMc filed this disingenuous lawsuit as a retaliatory gambit to

---

[1] *National Rifle Association of America v. Ackerman McQueen, Inc, Mercury Group, Inc, Henry Martin, and Jessee Greenberg*, Civil Action No.3:19-cv-02074-G (N.D.Tex.) (J. Fish).

DEFENDANT'S AMENDED ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT                Page 1

silence Stinchfield and deter the dozens of other AMc employees from speaking the truth. Unfortunately for AMc, truth is a defense to defamation, and Mr. Stinchfield looks forward to litigating the truth about AMc's practices in this forum.

Importantly, even if Mr. Stinchfield had made a libelous statement—which he did not—AMc would be "libel proof" as a matter of law. As a result of decades of malfeasance, recently exposed in other high-profile disputes, AMc's professional reputation is "so diminished that . . . it could not be further damaged."[2] Indeed, even before its current disputes with the National Rifle Association of America (the "NRA"), AMc had significant reputational liabilities. For example:

- In 1990, when AMc was the subject of a sex discrimination lawsuit filed by the Equal Employment Opportunity Commission.[3] The agency was accused of firing an employee because she was pregnant – and an adverse ruling against the agency was allowed to let stand by the U.S. Supreme Court.[4]

- Shortly thereafter, Ackerman endured an embarrassing string of public news reports, as it came under fire by a former Oklahoma County Commissioner for work product that was an "absolute embarrassment" to the people of Oklahoma County.[5] And although its dogged efforts to expand, via mergers and otherwise, briefly bore fruit, Ackerman began to spiral into decline by the early 2000s. It lost lucrative accounts, come under scrutiny by state regulators, and struggled to meet the demands of expanded overhead. Left in its wake were dozens of terminated employees, fleeing clients, and numerous shuttered offices.[6]

- In May 2003, Ackerman came under scrutiny by state regulators in Oklahoma.[7] The Attorney General of Oklahoma commissioned an independent audit of the agency's contract with the Oklahoma Tourism and Recreation Department, and

---

[2] *See McBride v. New Braunfels Herald-Zeitung*, 894 S.W.2d 6, 9 (Tex. App. 1994), *writ denied* (Mar. 30, 1995).

[3] *City Ad Agency named in Sex Discrimination Suit*, The Oklahoman, May 8, 1990.

[4] *City Firm's Job Firing Appeal Lost,* The Oklahoman, October 6, 1992.

[5] Randy Ellis, *Commissioner Cites Poor Grammar In City's Letter to Aspin*, The Oklahoman, April 20, 1993.

[6] Paul Monies, *City ad agency confirms loss of Six Flags account*, The Oklahoman, August 28, 2003.

[7] Carmel Perez Snyder, *Tourism Spending decisions draw criticism from auditors*, The Oklahoman, May 8, 2003.

found that Ackerman invoiced the state and received payments in advance of rendering professional services in violation of state purchasing laws.[8]

- Shortly thereafter, Ackerman would lose its largest commercial client, Six Flags of America.[9] Although the agency publicly clung to a failing narrative about the strong financial health of the agency, Ackerman immediately began closing international offices and terminating employees – by the dozens. Not surprisingly, when Ackerman learned that it lost the account despite its efforts to save it, Ackerman's CEO publicly disparaged Six Flags for parting ways with the agency, insisting that Six Flags had endured "rough years" and fired Ackerman because of Ackerman's criticisms of its product offerings.[10]

- A couple of years later, in 2006, the educational toy manufacturer Leap Frog abruptly ended its relationship with Ackerman.[11] This would mark the beginning of an unfortunate chapter in the history of Ackerman, as the agency's business and billing practices drew scrutiny from former clients—and still-existing ones.

- In 2007, AMc's business practices again generated negative headlines, when news outlets throughout Oklahoma reported that it had originated conflicting engagements with adverse stakeholders in a local power-plant dispute."[12]

Through it all, AMc's stalwart primary client, the NRA, remained with the agency, apparently reassured by Ackerman's expression of loyalty to the Association and its core advocacy. Unfortunately, in hindsight, concerns raised by other AMc clients had merit—indeed, AMc apparently took advantage of the NRA, too.

Thus in 2015, NRA board member Lt. Col. Robert K. Brown identified billing discrepancies relating to Ackerman's costs for the NRA print publication, *First Freedom*. At the same time, Lt. Col. Brown recognized that Ackerman was billing the NRA and its members tens of thousands of dollars for mysterious "out of pocket expenses with no further documentation."

---

[8] Oklahoma Tourism And Recreation Department Special Investigate Audit for the period July 1, 2001 Through October10, 2002.

[9] Mindy Charski, *The Thrills—and $90 Mil.—Are Gone*, Adweek, August 29, 2003.

[10] Richard Williamson, *The Ride's Far Form Over at Ackerman McQueen*, Adweek, August 2, 2004.

[11] Gregory Solman, *LeapFrog to TBWA/Chiat/Day*, Adweek, August 24, 2006.

[12] Ben Fenwick, *Ackerman McQueen handled ads for both sides of coal-plant issue*, Oklahoma Gazette, September 9, 2007.

Lt. Col. Brown later referred to AMc leadership as "vampires" for the agency's allegedly inflated bills.

In January 2017, the NRA hired a digital media expert, recruited from a major Silicon Valley technology company, to help the Association leadership to better assess AMc's claims relative to the agency's claim regarding NRATV— the digital streaming network developed by AMc for the NRA at which Defendant worked. This expert's initial review of Ackerman's work determined the agency was likely charging the NRA significant fees and yet failing to deliver even rudimentary value. On February 7, 2017, in a meeting which became legend around AMc headquarters in Dallas, this expert asked basic, nonconfrontational questions that sought to explore AMc's approach to digital viewership metrics and monetization.  Unable to answer the expert's questions, Mr. Revan McQueen dismissed her with foul language and stormed out of the room.  By April 2017, this expert was being stonewalled by Ackerman for basic data and information required to perform Google Analytics for NRATV.

Needless to say, these events eventually culminated in multiple lawsuits by the NRA against AMc. There, the NRA's allegations and evidence have captured the attention of former clients and members of the advertising community.

A representative of The American Clean Skies Foundation, a former Ackerman client, wrote the NRA in April 2019 to note that he "could relate" to accusations being made by the NRA against the agency. He noted that his "demands for detailed billing went ignored" for the Ackerman project in which he was involved. He reportedly was rebuffed when he inquired about salary information for "TV anchors" employed by Ackerman, as the agency exhausted nearly all of the money that was allocated for a nonprofit marketing plan to promote cleaner energy in the U.S. transportation and power sectors. He observed that he was pleased to see "AM get called

on their practices finally" – a ringing endorsement of the claims being made by the NRA and allegations captured in Defendant's affidavit.

By May 2019, there was full throated recognition of the merits of the NRA's lawsuit against Ackerman – *from other Ackerman clients*.

Dan Boren is a former NRA board member who is President of Corporate Development for the Chickasaw Nation. The Chickasaw Nation is one of Ackerman's largest clients. Boren wrote an email, dated May 30, 2019, that recognized "Ackerman is in trouble on this one [the NRA lawsuit]. They can't produce the backup to the invoices and were allocating fully salary to these employees that may have been working on our accounts." In other words, a representative of an existing Ackerman client recognized the fraudulent billing practices of the agency.

By August 2019, Ackerman captured headlines for reportedly laying off more than 50 employees – many without sufficient severance pay despite their years of loyal service. [13]

Amid these controversies—and many others—Ackerman has lashed out at anyone who dared to question its practices. Ackerman refuses to answer for the claims made in Stinchfield's affidavit or the string of NRA lawsuits in which it is ensnared. Instead, it has attacked Defendant, the NRA, and the lawyers and advisors who are taking measures to protect the legal, regulatory and reputational interests of the NRA.

Against this backdrop, Stinchfield denies the allegations in the Complaint, and asserts various affirmative defenses, as follows.

1. Stinchfield denies the allegations contained in paragraph 1.

2. Stinchfield denies the allegations contained in paragraph 2.

---

[13] Betsy Woodruff, *NRA TV Creator Laid off Dozens After Slit From Gun Group: Lawyer*, The Daily Beast, August 28, 2019.

## II. NOITCE OF RELATED CASE

3.      Paragraph 3 contains statements of law to which no responsive pleading is required.  Stinchfield denies the remaining allegations contained in paragraph 3.

## III. PARTIES

4.      Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 4.

5.      Stinchfield admits to the allegations contained in paragraph 5.

## IV. JURISDICTION AND VENUE

6.      Paragraph 6 contains statements of law to which no responsive pleading is required.  To the extent any response is required, Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 6.

7.      Paragraph 7 contains statements of law to which no responsive pleading is required.  To the extent any response is required, Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 7.

8.      Paragraph 8 contains statements of law to which no responsive pleading is required.  To the extent any response is required, Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 8.

## V. FACTUAL BACKGROUND

A. **The relationship between AMC and the NRA.**

9. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 9.

10. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 10.

B. **The creation and evolution of what became NRA TV.**

11. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 11.

12. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 12.

13. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and, on that basis, denies the allegations contained in paragraph 13.

14. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 14.

**C.    The NRA touted NRA TV as one of its most successful projects.**

15.    Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 15.

**D.    Defendant was proud of AMc and NRA TV, too.**

16.    Stinchfield denies the allegations that he disparages and defames AMc. Stinchfield admits to the remaining allegations in in paragraph 16.

17.    Stinchfield admits to the allegations in paragraph 17.

18.    Stinchfield admits to the allegations in paragraph 18.

**E.    Defendant becomes a pawn in the NRA's and LaPierre's game.**

19.    Stinchfield admits to resigning from AMc on October 4, 2019. Stinchfield denies the remaining allegations in paragraph 19.

20.    Stinchfield denies that his affidavit contains false statements. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and, on that basis, denies the allegations contained in paragraph 20.

21.    Stinchfield admits to the statement quoted from Defendant's affidavit. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and, on that basis, denies the allegations contained in paragraph 21.

22.    Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 22.

23.    Stinchfield admits that the analytics presented a distorted picture of "live real time viewership of his show." Stinchfield is without knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations and, on that basis, denies the allegations contained in paragraph 23.

24. Stinchfield admits to allegations in paragraph 24.

25. Stinchfield denies the allegations contained in paragraph 25.

26. Stinchfield admits to the allegations in paragraph 26.

27. Stinchfield admits to asking for a raise. Stinchfield denies the remaining allegations in paragraph in 27.

28. Stinchfield denies the allegations contained in paragraph 28.

29. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 29.

30. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 30.

31. Stinchfield denies that the allegations in his affidavit are false and disparaging. Stinchfield admits to the remaining allegations in paragraph in 31.

32. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 32.

33. Stinchfield denies the allegations that he misconstrued AMc's with respect to School Shield. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations and, on that basis, denies the allegations contained in paragraph 33.

34. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 34.

**F.     The motivation for Defendant's maliciously false written statement.**

35. Stinchfield denies the allegations in paragraph in 35.

36. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 36.

37. Stinchfield denies the allegations in paragraph in 37.

38. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 38.

39. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 39.

## CAUSES OF ACTION

### Count One- Defamation

40. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 40.

41. Stinchfield denies the allegations in paragraph in 41.

42. Stinchfield denies the allegations in paragraph in 42.

43. Stinchfield admits that he is a non-media defendant and his written affidavit was not written as a member of the print, broadcast, or electronic media at time in paragraph 43.

44. Stinchfield denies the allegations in paragraph in 44.

45. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 45.

46. Stinchfield denies the allegations in paragraph in 46.

47. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 47.

## Count Two- Business Disparagement

48. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 48.

49. Stinchfield denies the allegations in paragraph in 49.

50. Stinchfield denies the allegations in paragraph in 50.

51. Stinchfield denies the allegations in paragraph in 51.

52. Stinchfield denies the allegations in paragraph in 52.

53. Stinchfield denies the allegations in paragraph in 53

54. Stinchfield denies the allegations in paragraph in 54.

55. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 55.

56. Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 56.

## DEMAND FOR JURY TRIAL

57. Paragraph 57 contains statements of law to which no responsive pleading is required. To the extent any response is required, Stinchfield is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and, on that basis, denies the allegations contained in paragraph 57. Additionally, Defendant herby demands a jury trial on all issues to which he is entitled to a jury trial in this action.

## PRAYER

58. Plaintiff's Prayer sets forth requests for relief to which no responsive pleading is necessary. To the extent any response is required, Stinchfield denies that Plaintiff is entitled to any relief from Stinchfield and further denies all allegations contained in paragraphs A–D of Plaintiff's Prayer.

## VI. AFFIRMATIVE DEFENSES

Stinchfield sets forth the following affirmative defenses. Stinchfield does not intend to assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiff bears the burden.

59. Plaintiff's claims are barred, in whole or in part, because the Complaint does not state a claim against Stinchfield upon which relief can be granted.

60. Plaintiff's claims are barred, in whole or in part, by the litigation privilege doctrine.

61. Plaintiff's claims are barred, in whole or in part by the substantial truth doctrine.

62. Plaintiff's claims are barred, in whole or in part by the libel-proof doctrine.

63. Plaintiff's claims are barred, in whole or in part by not pleading the required heighten burden as a public figure—actual malice.

64. Plaintiff's claims are barred, in whole or in part by being liable for libel per se.

65. Stinchfield reserves the right to amend this Answer based on information learned through discovery

Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**

By: /s/ *William A. Brewer III*
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Ian Shaw
State Bar No.24117041
ins@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**COUNSEL FOR DEFENDANT GRANT STINCHFIELD**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above was served on all counsel of record via the Court's electronic notification system in accordance with the Federal Rules of Civil Procedure on the 9th day of January 2020.

                                            */s/ William A. Brewer III*
                                            William A. Brewer III

4815-0163-1662, v. 1

4822-2365-7905.3
8001-213