IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ACKERMAN MCQUEEN, INC.          §
                                §
v.                              §          Case No. 3:19-cv-03016-X
                                §
GRANT STINCHFIELD               §

**INDEX TO APPENDIX IN SUPPORT OF**
**MOTION FOR ENTRY OF PROTECTIVE ORDER**

| Ex. | Description | Pages |
|-----|-------------|-------|
| A | Declaration of J. Brian Vanderwoude | 2-3 |
| 1 | Protective Order entered by the Circuit Court for the City of Alexandria on September 23, 2019, in the case styled *National Rifle Association of America, Inc. v. Ackerman McQueen, Inc.*, Case Nos. CL19001757, CL 19002067 (consolidated) | 4-23 |
| 2 | Order entered by Magistrate Judge Tolliver on June 22, 2020, in the case styled *National Rifle Association of America, Inc. v. Ackerman McQueen, Inc.*, Case No. 3:19-cv-02074-G; pending in the United States District Court for the Northern District of Texas | 24-29 |
| 3 | Protective Order entered by Magistrate Judge Tolliver on June 22, 2020, in same | 30-49 |
| 4 | Defendant's First Requests for Production to Plaintiff | 50-79 |
| 5 | Correspondence between counsel on March 31, 2020 | 80-104 |
| 6 | Correspondence between counsel on June 9, 2020 | 105-107 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC. | § | |
| | § | |
| v. | § | Case No. 3:19-cv-03016-X |
| | § | |
| GRANT STINCHFIELD | § | |

## DECLARATION OF J. BRIAN VANDERWOUDE

Pursuant to 28 U.S.C. § 1746, I, J. Brian Vanderwoude, hereby declare as follows:

1.      My name is J. Brian Vanderwoude.  I am over eighteen years of age.  I have never been convicted of a felony or misdemeanor involving moral turpitude.  I am fully competent to make this declaration.

2.      I am a partner at Dorsey & Whitney, LLP ("*Dorsey*") and counsel of record for Ackerman McQueen, Inc. ("*AMc*") in the above-captioned matter and other matters.

3.      Attached hereto as **Exhibit A-1** is a true and correct copy of the Protective Order entered by the Circuit Court for the City of Alexandria on September 23, 2019, in the case styled *National Rifle Association of America, Inc. v. Ackerman McQueen, Inc.*, Case Nos. CL19001757, CL 19002067 (consolidated).

4.      Attached hereto as **Exhibit A-2** is a true and correct copy of the Order entered by Magistrate Judge Tolliver on June 22, 2020, in the case styled *National Rifle Association of America, Inc. v. Ackerman McQueen, Inc.*, Case No. 3:19-cv-02074-G, pending

**DECLARATION OF BRIAN VANDERWOUDE – PAGE 1**

in the United States District Court for the Northern District of Texas (the "*NRA Texas Action*").

5.      Attached hereto as **Exhibit A-3** is a true and correct copy of the resulting Protective Order entered by Magistrate Judge Tolliver on June 22, 2020, in the NRA Texas Action.

6.      Attached hereto as **Exhibit A-4** is a true and correct copy of Defendant's First Requests for Production to Plaintiff in this matter, served on or about February 11, 2020.

7.      Attached hereto as **Exhibit A-5** is a true and correct copy of correspondence with Defendant's counsel, Ian Shaw, dated March 31, 2020.

8.      Attached hereto as **Exhibit A-6** is a true and correct copy of correspondence from Defendant's counsel, Ian Shaw, dated June 9, 2020.

I declare under penalty of perjury and in accordance with 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on June 23, 2020, in Dallas County, Texas.

_____

J. Brian Vanderwoude

# EXHIBIT 1

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Nos. CL19001757; |
| ) | CL19002067 |
| ACKERMAN MCQUEEN, INC., ) | |
| ) | |
| and ) | |
| ) | |
| MERCURY GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

### PROTECTIVE ORDER

1.  **PURPOSES AND SCOPE**

    1.1    Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action may be warranted.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order (the "Order").

    1.2    The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under the applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law.  Except as otherwise stated in this Order, a Party shall produce, in response

1

EXHIBIT
1
5

to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

      1.3    This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067 and any other persons or entities who become bound by this Order.

      1.4    The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

## 2.   **DEFINITIONS**

The following definitions apply for purposes of this Order:

      2.1    Action: The lawsuits entitled *NRA v. AMc, et al.* filed in the Circuit Court for the City of Alexandria with case Nos. CL19001757 and CL19002067.

      2.2    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

      2.3    Confidential Information: Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Rule 4.1(c) of the Rules of the Supreme Court of Virginia.

2.4   Counsel: Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5   Designating Party: a Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.6   Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7   Expert: a person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8   Highly Confidential Information: Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating

3

Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9 In-House Counsel: attorneys who are employees of a Party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10 Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.11 Outside Counsel of Record: attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12 Party: any party to this Action.

2.13 Privileged Material: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14 Producing Party: a Party or Non-Party that produces Discovery Material in this Action.

2.15 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, graphic support services, coding, translating, preparing

4

*8*

exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17 Receiving Party: a Party that receives Discovery Material from a Producing Party.

3.   **SCOPE**

3.1   The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2   This Order and its protections apply for pre-trial purposes only. The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

4.   **DURATION**

4.1   Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later

5

of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   **DESIGNATING PROTECTED MATERIAL**

    5.1    Manner and Timing of Designations. Except as otherwise provided in this Order (*see, e.g.*, Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced. The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatments are so designated. Either designation may be withdrawn by the Designating Party. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

    5.2    Designation in conformity with this Order requires the following:

    5.2.1 *Marking*. All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item is Confidential or Highly Confidential or contains such

6

information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2 A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3 *Timing*. Except as otherwise provided herein and documents that have already been produced, documents and other objects must be designated before disclosure or production. In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing. The specific page and line designations over which confidentiality is claimed must be provided to counsel for the Parties within thirty (30) calendar days of receipt of the transcript in final form from the court reporter except counsel may agree to extend such period. Deposition or pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation. After the expiration of that period, the transcript shall be treated only as actually designated.

5.2.4 For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." If the Protected Material is

produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

    5.3   Inadvertent Failures to Designate. Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto. In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information. In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within 10 calendar days of learning of it and will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

## 6.   CHALLENGING CONFIDENTIALITY DESIGNATIONS

    6.1   Timing of Challenges. A challenge to a designation of confidentiality may be made at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right

to challenge a confidentiality designation by electing not to mount a challenge promptly after the confidentiality designation is made.

6.2     Form of Challenges. The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order. The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation. Counsel may agree to reasonable extensions.

6.3     Meet and Confer. If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions. The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient). A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating Party could not agree, within fourteen (14) calendar days of the Parties agreeing

9

that the meet-and-confer process will not resolve their dispute. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5    The burden of persuasion in any such challenge proceeding shall be on the Designating Party. While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

6.6    If a Designating Party or the Court identifies or determines that material that had been designated as Protected Material should no longer be so designated, that material will no longer be subject to the restrictions designated herein for the treatment of Protected Material.

7.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), so long as such use is permitted herein. Any Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1 Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or

10

*14*

any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

7.2 <u>Restrictions on Use of Confidential Information</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

7.2.1 the Receiving Party's Counsel (including their employees and support staff);

7.2.2 the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

7.2.3 Experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

7.2.4 the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5 special masters or discovery referees appointed by the Court;

7.2.6 mediators and their staff;

7.2.7 court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

7.2.8 potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

7.2.9 the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

7.2.10 any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11 any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1."

7.3    Restrictions on Use of Highly Confidential Information.

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed. However, notwithstanding the above, information designated in good faith as "HIGHLY CONFFIDENTIAL" may be disclosed to counsel for the NRA, AMc, and/or Mercury Group and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents. Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett,

Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

## 8.   **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

8.1   If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1 promptly notify in writing the Designating Party unless prohibited by law from doing so. Such notification shall include a copy of the subpoena or court order;

8.1.2 promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

8.1.3 cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2   If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

## 9.   **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION**

9.1   The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action. Such information produced by Non-Parties in connection with

13

this Action is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10. **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

10.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

11. **REDACTIONS ALLOWED**

11.1 Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material. The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

14

11.2 The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3 Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12. **MISCELLANEOUS**

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. Any Party, entity or person covered by this Order may at any time apply to the Court for relief from any provision of this Order. Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material. A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

12.4 Hearings and Appeals

15

12.4.1 In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

12.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5 Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not: (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

13. **FINAL DISPOSITION**

13.1 Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants

16

and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, except (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities. As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

DATED: October 8, 2019

Alexandria Circuit Court Judge

SEEN *AND AGREED*

DATED: _September 23, 2019_ _____

Attorney for Plaintiff
Robert H. Cox
VA Bar 33118

DATED: _____ _____

Attorney for Defendant
DAVID H. DICKIESON
VA BAR 31368

4820-5217-3221.1

18

## EXHIBIT 1 TO PROTECTIVE ORDER

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA

**NATIONAL RIFLE ASSOCIATION OF AMERICA,**

      **Plaintiff,**

**v.**

**ACKERMAN MCQUEEN, INC.**

      **And**

**MERCURY GROUP, INC.**

      **Defendants.**

**Case Nos. CL19001757, CL19002067**

## ACKNOWLEDGEMENT OF AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, the undersigned, state that:

I have reviewed the Protective Order in this matter.

I hereby agree to be bound by and comply with the terms of the Protective Order.

DATED this _____ day of , _____, _____

_____

(Typed or Printed Name)

_____

(Signature)

4836-0458-9479.2

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § | |
| | § | |
| PLAINTIFF AND | § | |
| COUNTER-DEFENDANT, | § | |
| AND | § | |
| WAYNE LAPIERRE, | § | |
| THIRD-PARTY DEFENDANT, | § | |
| V. | § | CASE NO. 3:19-CV-2074-G-BK |
| ACKERMAN MCQUEEN, INC., | § | |
| DEFENDANT AND | § | |
| COUNTER-PLAINTIFF, | § | |
| AND | § | |
| MERCURY GROUP, INC. ET AL., | § | |
| DEFENDANTS. | § | |

### ORDER

Pursuant to the District Judge's *Order*, Doc. 99, the National Rifle Association of America's ("NRA") *Motion to Enter Proposed Protective Order for Non-Parties*, Doc. 50, is before the Court for determination. For the reasons stated below, the Court adopts Defendants' proposed protective order and **DENIES** the NRA's motion, Doc. 50.

### I. BACKGROUND

The NRA and its CEO, Wayne LaPierre ("LaPierre"), bring this civil action asserting claims based on the termination of a long time business relationship between the NRA and Defendant Ackerman McQueen, Inc. ("Ackerman"), a public relations agency, and Mercury Group, Inc. (collectively, "AMc"), a wholly-owned subsidiary of Ackerman that specializes in public communications strategy. Doc. 18 at 1, 6, 9. The NRA also brings claims against three Ackerman executives (collectively, with AMc, "Defendants"). Doc. 18 at 7.

EXHIBIT
**2**

As of the date of this Order, the NRA has initiated three additional lawsuits against Defendants, which have been consolidated and are pending in Virginia. Doc. 31 at 105 n.40; Doc. 53 at 2 (the "Virginia lawsuit"). In the Virginia lawsuit, the parties agreed to a protective order with two tiers of confidentiality. Doc. 56 at 119-20 (permitting parties to designate discovery as Confidential Information or Highly Confidential Information). In this action, the parties agree on the need for a protective order, but disagree on its terms. In short, the NRA and LaPierre propose a protective order with one tier of confidentiality ("Confidential Information") while Defendants propose a protective order with two tiers ("Confidential Information" and "Highly Confidential Information").

## II. APPLICABLE LAW

A court may issue a protective order, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). When parties to an action agree on the entry of a protective order, but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating that "good cause" exists for the level of protection sought. *Document Gen. Corp. v. Allscripts, LLC*, Case No. 6:08-CV-479, 2009 WL 1766096, *2 (E.D. Tex. June 23, 2009). "The party attempting to establish good cause must demonstrate 'a clearly defined and serious injury to the party seeking closure.'" *Id.* (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

## III. PARTIES' ARGUMENTS

The NRA's requested protective order proposes a one-tier level of confidentiality, granting "non-parties the ability to designate discovery materials confidential, if appropriate."

2

Doc. 50 at 2; Doc. 51 at 270 (defining "Confidential Information" as "things that qualify for protection under the Federal Rules of Civil Procedure and applicable precedent"). In response, Defendants propose two tier levels of confidentiality, allowing discovery materials to be designated Confidential Information[1] and Highly Confidential Information. Doc. 51 at 33. Defendants propose that Highly Confidential Information "may not be disclosed or disseminated to William A. Brewer, III ["Brewer"] or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm . . . ." Doc. 51 at 43. The Brewer Firm is the NRA's counsel as well as a public relations provider. Doc. 51 at 86-87. Defendants aver that their proposed protective order is substantially identical to the protective ordered entered in the related Virginia lawsuit, which the NRA itself had proposed. Doc. 53 at 2. Defendant's argue that if this Court's order is less restrictive, "Brewer and his firm will use this case to circumvent the Virginia protective order to obtain highly confidential, competitive information to severely prejudice AMc—especially true of customer and financial information." Doc. 51 at 5. Meanwhile, the NRA and LaPierre contend that Brewer and AMc are not direct competitors as their size and services significantly vary. Doc. 61 at 7-10; Doc. 103 at 6. The Court agrees with Defendants.

## IV. ANALYSIS

Because Defendants' proposed version of the protective order is more restrictive than the NRA's, the burden of establishing good cause for the level of protection sought falls on them. *See Document Gen. Corp.*, 2009 WL 1766096, *2. The Court has reviewed (1) the NRA's proposed protective order, Doc. 51 at 268-86; (2) Defendants' proposed protective order, Doc.

---

[1] Defendants' definition of Confidential Information is identical to the NRA's definition. Doc. 51 at 33, 270.

51 at 31-48; (3) the protective order the parties agreed to in the Virginia lawsuit, Doc. 56 at 118-35; and (4) the parties' briefing.  Upon consideration, the undersigned finds that Defendants have established good cause and demonstrated "a clearly defined and serious injury" to warrant the additional protection they seek—namely, the inclusion of the Highly Confidential Information designation.  *Document Gen. Corp.*, 2009 WL 1766096, *2.

The Court finds Defendants' argument that the NRA is attempting to circumvent the Virginia protective order highly persuasive.  The NRA all but concedes this point in its proposed protective order, which states "[d]ocuments designated 'Highly Confidential' for purposes of the Virginia Action shall be treated as 'Confidential' for purposes of this Action.'"  Doc. 51 at 270.

Even though the NRA and LaPierre insist that Brewer and AMc are not competitors, the Court notes that Brewer and AMc both provide public relation services.  *See* Doc. 31 at 96 ("Brewer entered the scene offering the NRA legal services while vying for the public relations work then being handled by AMc.").  In fact, the Parties argued this very issue in the Virginia lawsuit.  Doc. 51 at 79-110 (Tr. of Hr'g on protective order).  Upon review of the transcript, this Court agrees with Judge Dawkins' conclusion that Brewer and its PR unit should be walled off from information designated as Highly Confidential Information.  Doc. 51 at 110. Indeed, if Brewer had access to AMc's Highly Confidential Information—which includes non-public financial statements, profit and loss data, and sales information relating to specific customers—then Brewer could use that competitive information to severely prejudice AMc.  Doc. 51 at 33.

Accordingly, Defendants have established good cause and demonstrated "a clearly defined and serious injury" to warrant the inclusion of the Highly Confidential Information designation in the parties' protective order.  *Document Gen. Corp.*, 2009 WL 1766096, *2.

4

## V.  CONCLUSION

For the foregoing reasons, the NRA's *Motion to Enter Proposed Protective Order for Non-Parties*, Doc. 50, is **DENIED**.  The Court adopts Defendants' proposed protective order, Doc. 51 at 31-48, which will be issued separately.

**SO ORDERED** on June 22, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, | § | |
| | § | |
| PLAINTIFF AND | § | |
| COUNTER-DEFENDANT, | § | |
| AND | § | |
| WAYNE LAPIERRE, | § | |
| THIRD-PARTY DEFENDANT, | § | |
| V. | § | CASE NO. 3:19-CV-2074-G-BK |
| ACKERMAN MCQUEEN, INC., | § | |
| DEFENDANT AND | § | |
| COUNTER-PLAINTIFF, | § | |
| AND | § | |
| MERCURY GROUP, INC. ET AL., | § | |
| DEFENDANTS. | § | |

## PROTECTIVE ORDER

**IT IS ORDERED THAT** the following provisions of this Protective Order ("Order")

shall control in this Action (defined below):

## 1. PURPOSES AND SCOPE

1.1     Disclosure and discovery activity in this Action are likely to involve production of

confidential, proprietary, or private information for which special protection from public

disclosure and from use for any purpose other than prosecuting this Action (as defined below) may

be warranted.

1.2     The purpose of this Order is to facilitate the production of discovery material,

facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to

be kept confidential and/or privileged, and ensure that protection is afforded only to material

entitled to such treatment, pursuant to the Court's inherent authority, its authority under the

EXHIBIT
3

applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law. Except as otherwise stated in this Order, a Party shall produce, in response to a valid discovery request, otherwise discoverable information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3     This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in the above-captioned litigation and any other persons or entities who become bound by this Order.

1.4     The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

## 2.    **DEFINITIONS**

The following definitions apply for purposes of this Order:

2.1     Action:  The lawsuit captioned above *National Rifle Association of America, et al. v. Ackerman McQueen, Inc.*, *et al.*, Civil Action No. 3:19-cv-02074-G-BK (N.D. Tex).

2.2     Challenging Party:  A Party or Non-Party that challenges the designation of information or items under this Order.

2.3     Confidential Information:  Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under the Federal Rules of Civil Procedure and applicable precedent.

2.4 <u>Counsel</u>: Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5 <u>Designating Party</u>: A Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "PRIVILEGED" or "HIGHLY CONFIDENTIAL."

2.6 <u>Discovery Material</u>: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7 <u>Expert:</u> A person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8 <u>Highly Confidential Information</u>: Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing

3

information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm. Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9  <u>In-House Counsel</u>: Attorneys who are employees of a Party to this Action. In House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10  <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

2.11  <u>Outside Counsel of Record</u>: Attorneys who are not employees of a Party to this Action but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.12  <u>Party</u>: Any party to this Action.

2.13  <u>Privileged Material</u>: Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege, immunity or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14  <u>Producing Party</u>: A Party or Non-Party that produces Discovery Material in this Action.

2.15  <u>Professional Vendors</u>: Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, graphic support services, coding, translating, preparing exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material:    Any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17    Receiving Party:  A Party that receives Discovery Material from a Producing Party.

2.18    Virginia Action: The consolidated lawsuits captioned *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, pending before the Circuit Court for the City of Alexandria, Virginia.

**3.    SCOPE**

3.1    The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2    This Order and its protections apply for pre-trial purposes only.  The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

**4.    DURATION**

4.1    Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the

5

completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

## 5. DESIGNATING PROTECTED MATERIAL

5.1    Manner and Timing of Designations.  Except as otherwise provided in this Order (see, *e.g*., Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced.  The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatment are so designated.  Either designation may be withdrawn by the Designating Party.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

# Nothing further on this page

5.2    <u>Designation in conformity with this Order requires the following</u>:

5.2.1    *Marking*.  All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated.  With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production, or filing that such tangible item is Confidential or Highly Confidential or contains such information. With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2    A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3    *Timing*.  Except as otherwise provided herein, documents and other objects must be designated before disclosure or production.  In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial testimony (or related exhibits) Confidential or Highly Confidential, such  designation may be made on the record of the deposition or hearing or within thirty (30) calendar days after receipt of the final transcript of such deposition or hearing.  The specific page and line designations over which confidentiality is claimed must be provided to counsel for the Parties within thirty (30) calendar days of receipt of the transcript in final form from the court reporter except counsel may agree to extend such period.  Deposition or

pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if applicable, extended deadline for designation. After the expiration of that period, the transcript shall be treated only as actually designated.

5.2.4    For information produced in some form other than documentary and for any other tangible items, the Producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." If the Protected Material is produced in an electronic form with a load file, the Designating Party shall note that there is Protected Material in the load file. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.2.5    *Inadvertent Failures to Designate.* Accidental or inadvertent disclosure of Protected Material—including Protected Material inadvertently disclosed by failure to redact as set forth in Section 11—does not waive the confidential status of such information or any privilege or other protection attached thereto. In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information. In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within ten (10) calendar days of learning of it and will make all reasonable efforts to ensure the

original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

6. **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     <u>Timing of Challenges</u>.  A challenge to a designation of confidentiality may be made at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount it a challenge promptly after the confidentiality designation is made.

6.2     <u>Form of Challenge</u>.  The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order.  The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  Counsel may agree to reasonable extensions.

6.3     <u>Meet and Confer</u>.  If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions.  The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient).  A Challenging Party may proceed to the next stage of the challenge process only

9

if it has engaged in this meet-and confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4     Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the Designating.  Party could not agree, within fourteen (14) calendar days of the Parties agreeing that the meet-and-confer process will not resolve their dispute.  Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  While a challenge is pending, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court orders otherwise.

6.6     If a Designating Party or the Court identifies or determines that material that had been designated as Protected Material should no longer be so designated, that material will no longer be subject to the restrictions designated herein for the treatment of Protected.

## 7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in this Action only for prosecuting, defending, or attempting to settle this Action, including any appeal(s), so long as such use is permitted herein. In addition, the parties may use in the Virginia Action any Protected Material that is disclosed or produced in this Action, which shall receive the same protections as set forth in this Order absent a court order otherwise. Subject to the foregoing, Protected Material may be disclosed only to the

10

categories of persons and under the conditions described in this Order. After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1 Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

7.2 <u>Restrictions on Use of Confidential Information</u>. Unless otherwise ordered by the Court, permitted in writing by the Designating Party, or used in the Virginia Action, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

7.2.1 the Receiving Party's Counsel (including their employees and support staff);

7.2.2 the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

7.2.3 experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

7.2.4 the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5 special masters or discovery referees appointed by the Court;

7.2.6 mediators and their staff;

11

7.2.7    court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

7.2.8    potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

7.2.9    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

7.2.10   any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11   Any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "l."

7.3 <u>Restrictions on Use of Highly Confidential Information</u>.

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed.  However, notwithstanding the above, information designated in good faith as "HIGHLY CONFIDENTIAL" may be disclosed to counsel for the NRA, AMc, Mercury Group, Henry Martin, William Winkler, Melanie Montgomery, and/or Jesse Greenberg and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents.  Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that

such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer, III or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett, Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

## 8. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

8.1    If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1    promptly notify in writing the Designating Party unless prohibited by law from doing so.  Such notification shall include a copy of the subpoena or court order;

8.1.2    promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

8.1.3    cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2    If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

13

## 9.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION

9.1    The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action.  Such information produced by Non-Parties in connection with this Action is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

## 10.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

10.1    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

## 11.   REDACTIONS ALLOWED

11.1    Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material.  The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate.  Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked.  If counsel for the Producing Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

14

11.2    The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3    Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12.    MISCELLANEOUS

12.1    <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  Any Party, entity, or person covered by this Order may at any time apply to the Court for relief from any provision of this Order.  Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

12.2    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3    <u>Filing Protected Material</u>.  Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.  A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

15

12.4     Hearings and Appeals

      12.4.1.   In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need.  The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

      12.4.2.   In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use.  Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5     Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not:  (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

## 13.    **FINAL DISPOSITION**

13.1     Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants, and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, exception (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be preserved as federal records or in compliance with other statutory, regulatory or legal authorities.  As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provisions, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies

17

that contain or constituted Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

      **SO ORDERED** on June 22, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## EXHIBIT 1 TO PROTECTIVE ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF | § | |
| AMERICA, | § | |
|     PLAINTIFF AND | § | |
|     COUNTER-DEFENDANT, | § | |
| AND | § | |
| WAYNE LAPIERRE, | § | |
|     THIRD-PARTY DEFENDANT, | § | |
| V. | § | CASE NO. 3:19-CV-2074-G-BK |
| ACKERMAN MCQUEEN, INC., | § | |
|     DEFENDANT AND | § | |
|     COUNTER-PLAINTIFF, | § | |
| AND | § | |
| MERCURY GROUP, INC. ET AL., | § | |
|     DEFENDANTS. | § | |

## ACKNOWLEDGEMENT OF AND
## AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I, understand and state that:

I have reviewed the Protective Order in this matter.

I hereby agree to be bound by and comply with the terms of the Protective Order.


DATED this _____ date of, _____, _____


_____
(Typed or Printed Name)


_____
(Signature)

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| GRANT STINCHFIELD, | § | CIVIL ACTION NO. 3:18-CV-03016-X |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANT'S FIRST REQUESTS
## FOR PRODUCTION TO PLAINTIFF

TO:   All Plaintiff, by and through their counsel of record, Brian Vanderwoude, Esq., Dorsey & Whitney, LLP

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 36, Defendant  Grant Stinchfield., ("Defendant") requests that Plaintiff Ackerman McQueen ("AMc") located in Oklahoma City, Oklahoma, respond to this request for production (each, a "Request"; collectively, the "Requests"), subject to the Instructions and Definitions set forth herein, and pursuant to the Federal Rules of Civil Procedure.  Plaintiff shall serve their responses on the earlier of any date ordered by the Court, as agreed by the parties, or within thirty (30) days after service hereof, pursuant to Fed. R. Civ. P. 36.

**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF**

**EXHIBIT 4**

Page 1

# I.

## <u>INSTRUCTIONS</u>

1.      To the extent provided by the Federal Rules of Civil Procedure, these document requests are intended to be continuing in nature.  You are requested and required to supplement your responses when appropriate or necessary to make correct and complete responses to the full extent provided by the Federal Rules of Civil Procedure, the Local Rules, and any Order of this Court.

2.      To the extent that the responding party believes that any of the following requests are vague or ambiguous, the responding party is requested to notify Plaintiff immediately and a clarification will be provided.

3.      These Requests are intended to include all documents in your possession, or subject to your custody or control, whether directly or indirectly.  A document is deemed to be within your possession, custody, or control if:  (1) it is within your actual possession, custody or control; or (2) it is within the possession of any other person or entity and you have the right to obtain the document from such person or entity, and you:  (a) own the document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any term; or (c) as a practical matter, have been able to use, inspect, examine or copy such document when you have sought to do so.  For the avoidance of doubt, these Requests are intended to include, but are not limited to, all documents subject to your control that are stored on any computers, Personal Digital Assistants (PDA), Blackberries, iPhones, or other smart phones.

4.      Unless otherwise indicated, the use in these Requests of your name or the name of any party, individual, business organization, or other legal entity, shall specifically include all of that individual's or entity's present or former employees, officers, directors, agents,

<u>**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF**</u>                          **Page 2**

representatives, members, departments, sections, affiliates, subsidiaries, parents, attorneys, and all other persons acting on his/her or its behalf.

5.       These Requests seek production of responsive documents in their entirety, without abbreviation, deletion, or redaction.  For the avoidance of doubt, each responsive e-mail message should be produced with all of its respective e-mail attachments, and each responsive e-mail attachment should be produced with its respective parent e-mail message and with all e-mail attachments to that respective parent e-mail message.  To the extent that you consider an e-mail message and its corresponding e-mail attachment(s) to constitute separate documents, Plaintiff requests the production of all documents attached to each responsive e-mail message, as well as all e-mail messages for which a responsive document is attached and all other documents attached to said e-mail messages.  For the further avoidance of doubt, all responsive electronic documents should be produced with all their corresponding metadata.  To the extent that you consider an electronic document's metadata to constitute a separate document, Plaintiff requests the production of all metadata that correspond to each responsive electronic document and all electronic documents that correspond to each responsive piece of metadata.

6.       In the event you interpose an objection to the requests or requests, you should clearly indicate to which part or portion of the request or requests the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate request.

7.       In the event that you seek to withhold any document, thing or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you are instructed to supply counsel for Plaintiff with a numerical list of document(s) and thing(s) for which privilege or limitation of discovery is claimed, indicating:

     a.      the name of each author, writer, sender, creator or initiator of such document or thing, if any;

     b.      the name of each recipient, addressee, or party for whom such document or thing was intended, if any;

     c.      the date of each such document, if any, or an estimate thereof and so indicated as an estimate if no date appears on said document;

     d.      the general subject matter as described in the document; and

     e.      the claimed grounds for privilege or limitation of discovery.

You are to produce the documents as they are kept in the ordinary course of business, with appropriate markings or designations, so that it may be determined to what request they are intended to be responsive.

# I.

## DEFINITIONS

1.      The term "**Complaint**" means Plaintiff's Original Complaint for actual damages, special damages, exemplary damages, costs of court, pre-judgment and post judgment interest at the highest lawful rate filed in this Action on December 20, 2019.

2.      "**Document**" shall mean all writings, drawings, graphs, charts, photographs, phonographic recordings, and other data compilations, whether created, printed, recorded, reproduced, stored, or maintained in paper form or in electronic form, such as a computer file, back-up file, or input and output file, and should be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, or attachments, and all preliminary or subsequent drafts, amendments, addendums, adjustments, alterations, modifications, changes, revisions, supplements, improvements, and corrections of the following items:  laboratory records, laboratory notebooks, diaries, notes, equipment usage logs, other relevant logs, input files and output files from

computer aided design ("CAD") programs, input files and output files from analytical and testing equipment, blueprints, engineering drawings, patent applications, draft patent applications, computer records, agreements, contracts, communications, including inter-company and intra-company communications, correspondence, e-mails, facsimiles, letters, telegrams, cables, telexes, memoranda, records, books, journals, calendars, day timers, date books, summaries of records or papers, maps, sketches, plans, blueprints, diagrams, tables, indices, pictures, recordings, tapes, accounts, analytical records, memoranda of telephone calls, minutes or records of meetings or conferences, presentations, reports, notes, minutes or summaries of interviews, conversations, telephone calls, conferences, negotiations, meetings, investigations, opinions or reports of consultants, appraisals, reports or summaries of negotiations, brochures, bulletins, pamphlets, circulars, advertising literature, trade letters, press releases, codes as well as other devices to decipher abbreviations or other notations, computer printouts, analytical records, diaries, forecasts, photographs, photocopies, recordings, tape recordings, motion picture films and videos, note charts, notebooks, documents generated for or as a result of meetings, agendas, minutes, lists of persons attending meetings, newspaper articles, mailing lists, drafts, marginal comments appearing on or affixed to any document, messages, financial statements, invoices, statements of account, receipts, loan agreements, credit and debit memoranda, drafts, projections, working papers, canceled checks and drafts (front and back), check stubs, receipts, videotape and/or audio recordings, digital photographs, photographs, voice messages, phone logs or call-back messages, computer-generated data reflecting the histories, author, drafts, and/or document profiles of any declarations, affidavits, and/or reports of any fact and/or expert witness, and/or any other documents, papers or writings of whatever description, including, but not limited to,

any information contained in any computer, computer network, computer back-up file or other information retrieval device.

3.      The term "**NRA**" shall mean The National Rifle Association of America and its officers, agents, attorneys, and anyone acting on its behalf.

4.      The term "**Brewer**" shall mean the law firm of Brewer Attorneys & Counselors, who represent Grant Stinchfield and the NRA.

5.      The terms "**Ackerman**" or "**AMc**" shall mean the Ackerman McQueen, Inc, The Mercury group, and all its affiliated entities.

6.      The term "**Defendant**" shall mean Grant Stinchfield and his attorneys, consultants, investigators, and all individuals and entities acting on his behalf or pursuant to his direction.

7.      The term "**Mr. McQueen**" shall mean Angus McQueen, former CEO who passed away July 16, 2019.

8.      The term "**Revan**" shall mean Revan McQueen, current CEO of Ackerman McQueen and son of Angus McQueen.

9.      The term "**Ms. Payne"** shall mean Tammy Payne, creative director of NRA TV and "significant other" of Angus McQueen.

10.     The term "**Ms. Montgomery**" shall mean Melanie Montgomery, Executive Vice President of Ackerman McQueen.

11.     The term "**Mr. Gable**" shall mean Todd Grable, the NRA's head of membership.

12.     "**Relate to**," "**related to**," "**relating to**," "**regarding**," "**referring**," "**concerning**," or "**concern**" means concerning, relating to, reflecting, referring to, having a relationship to, pertaining to, identifying, containing, pertinent to, compromising, setting forth,

showing, disclosing, describing, explaining, summarizing, evidencing, or constituting, directly or indirectly, in whole or in part, or to be otherwise factually, legally or logically connected to the subject matter of the particular Request.

13.    "**Viewership Analytics**" shall mean any analysis or presentation of viewership numbers, including but not limited to, any analysis or presentation of viewership metrics, viewership data, viewership analytics, and/or viewership statistics

14.    The term "**NRA TV**" shall mean the streaming channel that began in 2016.

15.    The term "**LaPierre**" shall mean Wayne LaPierre the current CEO of NRA.

16.    The term "**Carry Guard**" shall mean a program created by the NRA designed to provide concealed-carry insurance and fire arms training for its subscribers.

17.    The term "**School Shield**" shall mean a program created by the NRA providing best practices in security infrastructure, technology, personnel, training, and policy to schools.

18.    The term "**Defendant's Affidavit**" shall mean the affidavit written by Grant Stinchfield.

19.    The terms "**You**," "**Your**," or "**Plaintiff**" shall mean the company Ackerman McQueen including all present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to Your direction.

20.    The term "**client**" shall mean any company, entity, or individual that hired AMc to provide a service.

21.    The term "**Six Flags**" shall mean Six Flags Entertainment Corporation and all its preceding entities.

22.    The term "**LeapFrog**" shall mean LeapFrog Enterprise Inc, the children's educational company.

23.    The term "**Chesapeake Energy**" shall mean Chesapeake Energy.

24.    The term "**Williams Energy**" shall mean Williams Energy Resources, LLC.

25.    The terms "**Brunswick**" shall mean Brunswick Indoor Recreation Group.

26.    The Term "**Youth for Tomorrow**" shall mean a Virginia-based charity dedicated to providing children and families with the opportunity to focus their lives and develop confidence, skills, intellectual ability, spiritual insight and moral integrity, resulting in positive changes to the benefit of the child, the family, the community and the nation.

27.    Whenever appropriate, the singular form of a word shall be interpreted in the plural, and vice-versa, and the words "**and**" and "**or**" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the Requests all documents that might otherwise be construed to be outside their scope.

28.    The terms "**communication**," "**communicate**," and "**communicated**" shall mean any oral, written, or recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, e-mails, text messages, conversations, facsimiles, letters, telegrams, cables, telexes, dialogues, discussions, negotiations, interviews, consultations, telephone calls, agreements, and other understandings, among two or more persons.  The term "**communication**" includes written summaries of any of the foregoing communications.

29.    The term "**high profile talent**" shall mean the on-air talent that was hired by AMc to host their respective shows on NRA TV.

**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF**                    **Page 8**

30.     Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

31.     Unless otherwise specified, the time period covered by each Request is from January 1, 2012 to the present.

32.     All definitions and rules of construction contained in the Federal Rules of Evidence and the Federal Rules of Civil Procedure are incorporated herein by reference.

## II.

## PRIVILEGED OR PROPRIETARY DOCUMENTS

If any document requested is withheld on the basis of any claim of privilege or work product, or otherwise, you are requested to submit a description of the withheld material or information pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

## III.

## LOST OR DESTROYED DOCUMENTS

If any document requested has been lost, discarded, or destroyed, you are requested to submit a written statement no later than the date of the commencement of the document production, identifying as completely as possible each such document so lost, discarded, or destroyed.  Identification of each such document shall include the date of disposal, manner of disposal, reason for disposal, persons authorizing the disposal, persons having knowledge of the disposal, and persons disposing of the document.

## IV.

## <u>DOCUMENTS REQUESTED</u>

**<u>REQUEST FOR PRODUCTION NO. 1</u>:**

Documents regarding client complaints.

**<u>RESPONSE</u>:**


**<u>REQUEST FOR PRODUCTION NO. 2</u>:**

Documents regarding client complaints from former clients.


**<u>REQUEST FOR PRODUCTION NO. 3</u>:**

Documents regarding employee complaints between or among You and your employees.

**<u>RESPONSE</u>:**


**<u>REQUEST FOR PRODUCTION NO. 4</u>:**

Documents regarding employee complaints between or among You and your former employees.

**<u>RESPONSE</u>:**


**<u>REQUEST FOR PRODUCTION NO.5</u>:**

Documents regarding vendor complaints between or among You and Your current vendors.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 6:**

Documents regarding vendor complaints between or among You and Your former vendors.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 7:**

Any documents that refer or relate to the creation, development, and launch of NRA TV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**

Documents between Mr. McQueen and AMc's board that refer to NRA TV's viewership analytics.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**

Documents referring or relating to NRATV viewership, including but not limited to, documents concerning viewership numbers, analytics, or data claiming to represent, correspond, or otherwise relate to "unique," "genuine, "complete," "incomplete," and "incidental," "engaged," or "total" views.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**

Documents regarding the termination of Your client relationship with Brunswick.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 11:**

Documents regarding the termination of Your client relationship with Six Flags.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 12:**

Documents regarding the termination of Your client relationship with Chesapeake Energy.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 13:**

Documents regarding the termination of Your client relationship with Williams Energy.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 14:**

Documents regarding the termination of Your client relationship with LeapFrog.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.15:**

Documents between You and Defendant.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 16**

Documents that set forth billing entries, statements, or invoices relating to Your employees that worked on NRA TV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 17:**

Documents regarding NRA TV's financials, projections, estimates, forecasts, and/or predications concerning NRA TV in 2016.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 18**

Documents regarding NRA TV's financials, projections, estimates, forecasts, and/or predications concerning NRA TV in 2017.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 19:**

Documents regarding NRA TV's financials, projections, estimates, forecasts, and/or predications concerning NRA TV in 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**

Documents regarding NRA TV's financials, projections, estimates, forecasts, and/or predications concerning NRA TV in 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**

Documents referring to or relating to the actual measurement of unique views of NRA TV.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**

Documents referring or relating to any commercial sponsorships of NRA TV including but not limited to documents referring to what You charged each sponsor and documents referring to Your profit from each sponsorship.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**

Documents that set forth Your financial statements from 2016-2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:**

Documents that set forth or analyze the viewership analytics of NRA TV, including but not limited to documents that refer to any communications among or between the Defendant and Mr. McQueen concerning NRA TV viewership analytics.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 25:**

Documents that set forth Your ideas, plans, and developments that administered NRA TV's content.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 26:**

Documents referring or relating to Your employees' time sheets concerning NRA TV and associated matters.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 27**

Documents regarding or relating to any request by the NRA for unique viewership data for NRA TV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:**

Documents regarding or relating to any request by the NRA for completed viewership data for NRA TV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.29:**

Documents regarding the board meetings You held concerning NRA TV's viewership analytics.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 30:**

Documents regarding the employee meetings You held concerning NRA TV's viewership analytics.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 31:**

Documents that support Your allegation in paragraph 1 of the original complaint that Defendant's statements were to hurt AMc's standing and improve the NRA's standing.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 32:**

Documents that support Your allegation in paragraph 1 of the original complaint that Defendant's statements caused You money damages.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:**

Documents that support Your allegation in paragraph 1 of the original complaint that this case is driven by the NRA and LaPierre's "sinister" and intentional efforts to destroy Your business.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 34:**

Documents that support Your allegation in paragraph 2 of the original complaint that Defendant has aligned himself with the NRA and LaPierre.


**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 35:**

Documents that support Your allegation in paragraph 25 of the original complaint that Defendant's statements concerning NRA TV's work environment were false.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 36:**

Documents regarding Chickasaw Nation's audit of Your billing practices including but not limited to the actual audit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on October 24, 2017.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on November 28, 2017.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.39:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on January 3, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.40:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on February 1, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.41:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on February 19, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.42:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on April 11, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.43:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on September 4, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.44:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on October 11, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO.45:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on October 23, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.46:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on October 30, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.47:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on November 28, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.48:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on December 5, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.49:**

All documents regarding the meeting You held with the NRA to discuss NRA TV viewership on January 18, 2019.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:**

Documents that support your allegation in paragraph 19 of the original complaint

regarding Defendant's attempt to align with the NRA to form a "smear campaign" against You.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 51:**

Documents that set forth the charges, costs and profits of NRA TV's live streaming.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.52:**

Documents that support Your allegation in paragraph 29 of the original complaint that

live programming was the quickest way to get messaging out after a tragedy.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 53:**

Documents that support Your allegation in paragraph 29 of the original complaint that the

analytics presented to the NRA showed that NRA TV became the go to source for information

after the Parkland school shooting.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 54:**

Documents that support Your allegation in paragraph 30 of original complaint that You

expanded the footprint of NRA TV at the NRA's and LaPierre's express direction.

**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF**          **Page 21**

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:**

Documents that support Your allegation that You had "concerns" with NRA's direction under LaPierre beginning in 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:**

Documents that support Your allegation in paragraph 23 of the original complaint that Josh Powell was trying to get You to promote the insurance portion of Carry Guard but referred to Carry Guard as an "insurance scheme."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:**

Documents that support Your allegation in paragraph 32 of the original complaint that You have always been an enthusiastic proponent of Carry Guard's training program.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 58:**

Documents that support Your allegation in paragraph 34 of the original complaint that the NRA and LaPierre showed no intention to execute School Shield's mission.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:**

Documents that support Your allegation in paragraph 32 of the original complaint that LaPierre systemically disassembled Carry Guard.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:**

Documents that support Your allegation in paragraph 34 of the original complaint that You expressed reservations about NRA's approach to School Shield.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:**

Documents that support Your allegation in paragraph 35 of the original complaint that Defendant's affidavit was maliciously written.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:**

Documents that support Your allegation in paragraph 37 of the original complaint that Defendant's affidavit was used in the media to "deflect attention" from LaPierre's and the NRA's other pending litigation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:**

Documents that support Your allegation in paragraph 38 of the original complaint that since the NRA has hired Brewer, LaPierre set out to intentionally destroy the relations between You and the NRA.

**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF**          **Page 23**

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 64:**

Documents that support Your allegation in paragraph 39 of the original complaint that Brewer is in competition with you as competing PR firms.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 65:**

All documents that set forth the contracts relating to the hiring of the "high profile" talent at NRA TV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO.66:**

Documents that relate to Your allegation in paragraph 20 of the original complaint that Defendant's affidavit was falsely written and was sent straight to the media in order to further defame AMc.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 67:**

Documents that realte to Your allegation in paragraph 22 of the original complaint that the analytics are not only legitimate, but they were impressive across all of the same platforms that media companies everywhere use to judge success in engagement and reach.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 68:**

All documents relating to your allegations in footnote 1 of the original complaint that LaPierre believed Defendant to be a loose cannon who could not be trusted to do unscripted media appearances.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 69:**

All documents regarding payments You made to vendors that were fully reimbursed by the NRA.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 70:**

All documents referring or relating to any valuation of NRATV, the NRATV brand, or the valuations of parts of NRATV (e.g., NRATV TV shows) or NRATV brand, including but not limited to, any analyses regarding the same.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:**

All documents that reflect unsuccessful client proposals.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:**

All documents concerning the performance, significance, and/or importance of the live broadcasting portion of NRATV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 73:**

All documents referring or relating to any sponsorships of NRATV.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 74:**

All Documents that relate to Youth for Tomorrow including but not limited to any donations, billings, invoices, and contracts between You and Youth for Tomorrow.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 75:**

All Documents regarding Your charitable and philanthropic giving.

**RESPONSE:**

February 11, 2020

Respectfully submitted,

**BREWER STOREFRONT, PLLC**


By: _/s/ Ian Shaw__
Ian Shaw
State Bar No. 24117041
1717 Main Street
Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR DEFENDANT
GRANT STINCHFIELD.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above was served on all counsel of record via electronic mail in accordance with the Federal Rules of Civil Procedure on the 11th day of February 2020.

_/s/ Ian Shaw_
Ian Shaw

**_Via Electronic Mail_**

**Jay J. Madrid, Esq**.
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq**.
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com

DORSEY & WHITNEY LLP
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT 5

| From: | Vanderwoude, Brian |
|-------|---------------------|
| To: | "Ian Shaw" |
| Cc: | Mason, Brian |
| Subject: | AMc/Stinchfield - protective order |
| Date: | Tuesday, March 31, 2020 2:16:23 PM |
| Attachments: | STINCHFIELD Protective Order-v1.docx |

Ian,

Per our discussion last week, attached is a draft of a proposed protective order.

Brian

**J. Brian Vanderwoude**
DORSEY & WHITNEY LLP
300 Crescent Ct, Suite 400 | Dallas, TX 75201
**P:** 214.981.9953   **F:** 214.853.5095   **C:** 214.673.0050

WWW.DORSEY.COM  ::  DALLAS  ::  BIO  ::  V-CARD

**EXHIBIT**
**5**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC. | § | |
| | § | |
| v. | § | Case No. 3:19-cv-03016-X |
| | § | |
| GRANT STINCHFIELD | § | |

## AGREED PROTECTIVE ORDER

## 1.   PURPOSES AND SCOPE

1.1   Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Action (as defined below) may be warranted.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order (the "*Order*").

1.2   The purpose of this Order is to facilitate the production of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, protect material to be kept confidential and/or privileged, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's inherent authority, its authority under the applicable Rules, the judicial opinions interpreting such Rules, and any other applicable law.  Except as otherwise stated in this Order, a Party shall produce, in response to a valid discovery request, otherwise discoverable

information in its possession, custody or control that is Confidential or Highly Confidential, and such information shall be handled in accordance with the procedures set forth herein.

1.3    This Order and all subsequent Protective Orders shall be binding on all Parties and their counsel in the above-captioned litigation and any other persons or entities who become bound by this Order.

1.4    The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.  The Parties further acknowledge, as set forth in Section 12.3 below, that this Order does not entitle them to file confidential information under seal.

2.    **DEFINITIONS**

The following definitions apply for purposes of this Order:

2.1    Action:  The lawsuit captioned above, *Ackerman McQueen, Inc. v. Grant Stinchfield*, Civil Action No. 3:19-cv-03016-X, pending in the United States District Court for the Northern District of Texas.

2.2    Challenging Party:  A Party or Non-Party that challenges the designation of information or items under this Order.

2

2.3     Confidential Information:  Discovery Material (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under the Federal Rules of Civil Procedure and applicable precedent.

2.4     Counsel:  Outside Counsel of Record, In-House Counsel, or counsel retained for the purpose of advising, prosecuting, defending, or attempting to settle this Action.

2.5     Designating Party:  A Party or Non-Party that designates documents, information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "PRIVILEGED" or "HIGHLY CONFIDENTIAL."

2.6     Discovery Material:  All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, answers to interrogatories, documents, responses to requests for admissions, tangible things, and informal exchanges of information), that are produced or generated in connection with any discovery in this Action, whether formally or informally.

2.7     Expert:  A person retained by a Party or its Counsel to serve as an expert witness or consultant or technical advisor in this Action (as well as his or her employees and support staff).

2.8     Highly Confidential Information:  Discovery Material that meets the definition of "Confidential Information" and which the Designating Party reasonably

3

believes to be information reflecting non-public technical research, pricing and business strategy documents concerning a particular product or service, financial statements reflecting sales data, margin data, cost and expense data, human resources or personnel files, and/or profit and loss data, sales information relating to specific customers or classes of customers, non-public research, provided that the nonpublic information is actually secret because it is neither known to, nor readily ascertainable by, another person or entity that can obtain economic value from the disclosure or use of such information, the Designating Party has taken reasonable measures to maintain the secrecy of that information and the Designating Party derives independent economic value and a competitive advantage from the secrecy of that information, including, as the case may be, containing information where production of the materials on a confidential or non-confidential basis would nonetheless likely cause substantial harm.  Nothing herein precludes any Party from seeking additional protections not currently contemplated by this Order to be applied to any particular document or category of documents, including Highly Confidential Information.

2.9   <u>In-House Counsel</u>:  Attorneys who are employees of a Party to this Action. In House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10   <u>Non-Party</u>:  Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action, and their counsel.

4

2.11    Outside Counsel of Record:  Attorneys who are not employees of a Party to this Action, but have been retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm that has appeared on behalf of that Party.

2.12    Party:  Any party to this Action.

2.13    Privileged Material:  Discovery Material protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege, immunity, or protection afforded or recognized by the Rules, including any such privilege or protection under applicable U.S. or foreign law, regulation or statute.

2.14    Producing Party:  A Party or Non-Party that produces Discovery Material in this Action.

2.15    Professional Vendors:  Persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, graphic support services, coding, translating, preparing exhibits or demonstrations, document review, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material:   Any Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

2.17    Receiving Party:  A Party that receives Discovery Material from a Producing Party.

2.18   <u>Virginia Action</u>: The consolidated lawsuits captioned *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886, pending before the Circuit Court for the City of Alexandria, Virginia.

**3.**   **<u>SCOPE</u>**

3.1   The protections conferred by this Order apply to Protected Material (as defined above) and also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, translations, or compilations of Protected Material; and (3) any oral, written, or electronic communications, testimony or presentations, including for purposes of settlement, by Parties or their Counsel that might reveal Protected Material.  However, the protections conferred by this Order do not cover information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order.

3.2   This Order and its protections apply for pre-trial purposes only.  The Parties will meet and confer at the appropriate time regarding any use of Protected Material at trial, which use shall be governed by a separate agreement or order.

**4.**   **<u>DURATION</u>**

4.1   Even after final disposition of this Action, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise

6

in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; or (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.     **DESIGNATING PROTECTED MATERIAL**

      5.1    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see, *e.g.,* Section 5.2.4 below), or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated at the time the material is disclosed or produced.  The Parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents or testimony that merit Confidential or Highly Confidential treatment are so designated.  Either designation may be withdrawn by the Designating Party.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, the Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    <u>Designation in conformity with this Order requires the following</u>:

5.2.1    *Marking*.  All or any part of a document, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated.  With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by written notice to the Receiving Party at the time of disclosure, production, or filing that such tangible item is Confidential or Highly Confidential or contains such information.  With respect to documents produced in native format, the Electronically Stored Information Protocol, or ESI Protocol, to be entered in this Action shall govern the form and method for marking such documents as Confidential or Highly Confidential.

5.2.2    A Receiving Party shall exercise good faith efforts to ensure that any copies, print-outs of natively produced documents or data, excerpts, summaries, or compilations include a confidentiality legend that matches the confidentiality designation the Designating Party applied to the document, discovery response, transcript, or pleading.

5.2.3    *Timing*.  Except as otherwise provided herein, documents and other objects must be designated before disclosure or production.  In the event that a Producing Party designates some or all of a witness's deposition or other pre-trial

testimony (or related exhibits) Confidential or Highly Confidential, such  designation

may be made on the record of the deposition or hearing or within thirty (30) calendar

days after receipt of the final transcript of such deposition or hearing.  The specific page

and line designations over which confidentiality is claimed must be provided to counsel

for the Parties within thirty (30) calendar days of receipt of the transcript in final form

from the court reporter except counsel may agree to extend such period.  Deposition or

pre-trial testimony shall be treated as Highly Confidential pending the deadline or, if

applicable, extended deadline for designation.  After the expiration of that period, the

transcript shall be treated only as actually designated.

      5.2.4    For information produced in some form other than documentary

and for any other tangible items, the Producing Party shall affix in a prominent place on

the exterior of the container or containers in which the information or item is stored the

legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."  If the Protected Material is

produced in an electronic form with a load file, the Designating Party shall note that there

is Protected Material in the load file.  If only a portion or portions of the information or

item warrant protection, the Producing Party, to the extent practicable, shall identify the

protected portion(s).

      5.2.5    *Inadvertent Failures to Designate*.  Accidental  or  inadvertent

disclosure of Protected Material—including Protected Material inadvertently disclosed

by failure to redact as set forth in Section 11—does not waive the confidential status of

such information or any privilege or other protection attached thereto.  In the event that Protected Material is inadvertently disclosed without appropriate designations, any Party or Non-Party may thereafter reasonably assert a claim or designation of confidentiality, and the Producing Party shall promptly provide replacement media. Thereafter, the Receiving Party must promptly return the original information and all copies of the same to the Producing Party, or destroy the original information and all copies, and make no use of such information.  In the event that Protected Material is inadvertently disclosed to any person and such disclosure is not permitted by the terms of this Order, the Party making the inadvertent disclosure shall promptly notify the Producing Party of such inadvertent disclosure within ten (10) calendar days of learning of it and will make all reasonable efforts to ensure the original and all copies of inadvertently disclosed information are not used and are promptly returned or destroyed.

**6.**     **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     <u>Timing of Challenges</u>.  A challenge to a designation of confidentiality may be made at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount it a challenge promptly after the confidentiality designation is made.

10

6.2     <u>Form of Challenge</u>.  The Challenging Party shall object to the propriety of the designation of specific material as Confidential or Highly Confidential by providing written notice to the Designating Party of each designation it is challenging and describing the basis for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific Section of this Order.  The Designating Party or its counsel shall thereafter, within fourteen (14) calendar days, respond to such challenge in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  Counsel may agree to reasonable extensions.

6.3     <u>Meet and Confer</u>.  If the Challenging Party continues to dispute the designation(s) at issue, it shall notify the Designating Party in writing within seven (7) calendar days thereafter. Counsel may agree to reasonable extensions.  The Parties shall attempt to resolve each challenge in good faith by conferring directly (in voice-to-voice dialogue; other forms of communication are not sufficient).  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet-and-confer process first or establishes that the Designating Party is unwilling to participate in the meet-and-confer process in a timely manner.

6.4     <u>Judicial Intervention</u>.  If the Parties cannot resolve a challenge without court intervention, the Challenging Party may move the Court for an order withdrawing the designation as to the specific designations on which the Challenging Party and the

11

Designating.  Party could not agree, within fourteen (14) calendar days of the Parties

agreeing that the meet-and-confer process will not resolve their dispute.  Each such

motion must be accompanied by a competent declaration affirming that the movant has

complied with the meet-and-confer requirements imposed in the preceding Section.

6.5     The burden of persuasion in any such challenge proceeding shall be on the

Designating Party.  While a challenge is pending, all Parties shall continue to afford the

material in question the level of protection to which it is entitled under the Designating

Party's designation until the Court orders otherwise.

6.6     If a Designating Party or the Court identifies or determines that material

that had been designated as Protected Material should no longer be so designated, that

material will no longer be subject to the restrictions designated herein for the treatment

of Protected.

## 7.     <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1     <u>Basic Principles</u>.  A Receiving Party may use Protected Material that is

disclosed or produced by another Party or by a Non-Party in this Action only for

prosecuting, defending, or attempting to settle this Action, including any appeal(s), so

long as such use is permitted herein.  In addition, the parties may use in the Virginia

Action any Protected Material that is disclosed or produced in this Action, which shall

receive the same protections as set forth in this Order absent a court order otherwise.

Subject to the foregoing, Protected Material may be disclosed only to the categories of

12

persons and under the conditions described in this Order.  After the final disposition of the Action, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION).  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.1.1    Except as otherwise provided in this Order, Counsel in this Action and any of their agents shall be prohibited from sharing with anybody any Protected Material, or any information derived from or based on any Protected Material, in connection with any investigation, proceeding, or contemplated proceeding.

7.2    <u>Restrictions on Use of Confidential Information</u>.  Unless otherwise ordered by the Court, permitted in writing by the Designating Party, or used in the Virginia Action, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

7.2.1    the Receiving Party's Counsel (including their employees and support staff);

7.2.2    the officers, directors, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Action;

7.2.3    experts retained by the Receiving Party or the Receiving Party's Counsel to whom disclosure is reasonably necessary for this Action;

7.2.4     the Court and its personnel, and any appellate court or other court (and their personnel) before which the Parties appear in this Action;

7.2.5     special masters or discovery referees appointed by the Court;

7.2.6     mediators and their staff;

7.2.7     court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action;

7.2.8     potential or actual witnesses in the Action to whom disclosure is reasonably necessary, unless otherwise agreed by the Designating Party or ordered by the Court;

7.2.9     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

7.2.10    any other person to whom the Designating Party, in writing, authorizes disclosure.

7.2.11    Any person or entity who receives information designated CONFIDENTIAL pursuant to this Protective Order shall (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1."

7.3 <u>Restrictions on Use of Highly Confidential Information</u>.

14

Unless otherwise provided for herein, information designated Highly Confidential by either party shall not be disclosed.  However, notwithstanding the above, information designated in good faith as "HIGHLY CONFIDENTIAL" may be disclosed to counsel of record for AMc and Stinchfield and each of their respective employees or representatives who (1) agree to be bound by the terms of this Protective Order and (2) execute the document attached hereto as Exhibit "1"; provided, however, that such any representative shall not discuss, disclose, summarize, describe, characterize, or otherwise communicate or make available such information to any person or entity prohibited by this Protective Order from accessing HIGHLY CONFIDENTIAL information and/or documents.  Similarly, information designated HIGHLY CONFIDENTIAL may be shared with experts and Court personnel, provided that the disclosing party obtains written assurance that such experts will protect the confidentiality of the information and that the Court personnel will keep such information under seal.

Notwithstanding anything herein to the contrary, HIGHLY CONFIDENTIAL information may not be disclosed or disseminated to William A. Brewer, III or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm, including Travis Carter, Andrea Burnett, Katherine Unmuth, Holly Heidemanns, and Lea Gamino-Blum, unless and until relief is obtained from the Court.

15

## 8.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

8.1     If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material, that Party must:

8.1.1     promptly notify in writing the Designating Party unless prohibited by law from doing so.  Such notification shall include a copy of the subpoena or court order;

8.1.2     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order.  Such notification shall include a copy of this Order; and

8.1.3     cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

8.2     If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party shall bear the burden and expense of seeking protection of its Protected Material, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

16

**9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS ACTION**

9.1     The terms of this Order are applicable to Protected Material produced by a Non-Party in this Action.  Such information produced by Non-Parties in connection with this Action is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

**10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

10.1     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures; (b) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (c) make all reasonable efforts to retrieve all unauthorized copies of the Protected Material.

**11.     REDACTIONS ALLOWED**

11.1     Any Producing Party may redact from Discovery Material matter that the Producing Party claims is Privileged Material.  The Producing Party shall ensure that the redaction is obvious to the Receiving Party and specify the basis for the redaction as appropriate.  Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked.  If counsel for the Producing

17

Party agrees or if the Court orders that Discovery Material initially redacted shall not be subject to redaction or shall receive alternative treatment, and the Discovery Material is subsequently produced in unredacted form, then that unredacted Discovery Material shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

11.2    The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Confidential Information and Highly Confidential Information as set forth in Section 6.

11.3    Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

## 12.    MISCELLANEOUS

12.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  Any Party, entity, or person covered by this Order may at any time apply to the Court for relief from any provision of this Order.  Subject to the agreement of the Parties or an order of the Court, other entities or persons may be included in this Order by acceding to its provisions in a writing served upon counsel for the Parties, with such writings to be filed with the Court if so directed.

18

12.2    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use as evidence any of the material covered by this Order.

12.3    <u>Filing Protected Material</u>.    Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.  A Party that seeks to file under seal any Protected Material must do so pursuant to the local rules.

12.4    <u>Hearings and Appeals</u>

13.4.1 In the event that a Receiving Party intends to utilize Protected Material during a pre-trial hearing, such Receiving Party shall provide written notice no less than three (3) calendar days prior to the hearing, to the Producing Party and/or the Designating Party, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing three (3) calendar days in advance, in which event notice shall be given immediately upon identification of that need.  The use of such Protected Material during the pre-trial hearing shall be determined by agreement of the relevant Parties or by Order of the Court.

13.4.2 In the event that any Protected Material is used in any court proceeding in this Action or any appeal in connection with this Action, except for the use of Protected Material during trial, the manner of which shall be determined pursuant to Section 3.2, such Protected Material shall not lose its protected status through such use. Counsel shall comply with all applicable local rules and shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

12.5    Reservations. Entering into, agreeing to or complying with the provisions of this Order shall not:  (1) operate as admission that any particular material contains Protected Material; or (2) prejudice any right to seek a determination by the Court (a) whether particular material should be produced, or (b) if produced, whether such material should be subject to the provisions of this Order.

## 13.    FINAL DISPOSITION

13.1    Within ninety (90) calendar days after the final disposition of this Action, as defined in Section 4, each Receiving Party, including its employees, attorneys, consultants, and experts, must use commercially reasonable efforts to destroy or return to the Producing Party all Protected Material, exception (1) backup tapes or other disaster recovery systems that are routinely deleted or written over in accordance with an established routine system maintenance practice, or (2) documents that must be

20

preserved as federal records or in compliance with other statutory, regulatory or legal authorities.  As used in this Section, "all Protected Material" includes all originals, copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, upon request of the Producing Party, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90-day deadline that (1) states that commercially reasonable efforts have been made to assure that all Protected Material has been returned or destroyed, and (2) affirms that the Receiving Party has not retained any originals, copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provisions, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product (including all emails attaching or referring to Protected Materials), and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constituted Protected Material remain subject to this Order as set forth in Section 4 (DURATION).

21

IT SO ORDERED.


DATED: _____          _____

Hon. Brantley Starr
United States District Judge

22

<u>**EXHIBIT 1 TO PROTECTIVE ORDER**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC. | § | |
| | § | |
| v. | § | Case No. 3:19-cv-03016-X |
| | § | |
| GRANT STINCHFIELD | § | |

**ACKNOWLEDGEMENT OF AND**
<u>**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**</u>

I, the undersigned, state that I have reviewed the Protective Order in this matter

and hereby agree to be bound by and comply with the terms of the Protective Order.  I

submit to the jurisdiction of this Court for enforcement of the Protective Order.

SIGNED on this _____ day of _____ 202___.


_____

Signature


_____

Typed or Printed Name

# EXHIBIT 6

From:             Ian Shaw
To:                Vanderwoude, Brian
Subject:        [EXTERNAL] Producing documents
Date:             Tuesday, June 9, 2020 9:00:08 AM
Attachments:  image001.png

Good Morning Brian,

Below are the notes from our meet and confer about the RFPs. Please see my comments in Red.

AMc' Counsel agrees to:

- Draft and send a proposed protective order to Stinchfield's counsel on April 1, 2020. The protective order will encompass Request Nos. 9, 21, 24,27-30, 37-49, 53, and 67. (After reviewing the proposed PO another meet and confer will occur.) We object to the protective order, but we will provide protection to information regarding trade secrets.
- Requests Nos. 52, 54-64,66 re allegations in complaint Counsel will circle back to and discuss with client. Please produce any responsive non privilege documents.
- Request Nos. 7-8, 17-20, 23, and 51  Counsel agreed to circle back to and ask the client about. Please produce any responsive non privilege documents
- Request Nos. 31-35, 50 Counsel stands strong on their privilege stance but agreed to produce any non-privilege documents that are responsive to these requests. A privilege log will need to be created for those docs that are being withheld as attorney-client privilege. Please produce any responsive non privilege documents.
- Will check on sponsorship requests and any requests that were produced in other matters. Please provide bates numbers if docs have already been produced.

Stinchfield's Counsel agrees to:

- Request Nos 1-6, 10-14, 71, 74-75, Counsel stands firmly that a reputation is created over a span of time and documents responsive to that span of time are highly relevant. Counsel believes that this span can go back several years. AMc's counsel believes that it is too board and would like to have a more narrow time frame (20 years is too much) and a subject matter, which they can find responsive documents to produce relating to these requests.
- Also AMc counsel would like for Stinchfield to define "client complaints." Stinchfeild's counsel will follow up with AMc after consulting with his client. I am working on narrowing this down to billing and business practices. I will get more clarity.
- Request No 25, counsel will circle back to possibly narrow. Lets hold off on this one for now. I will get more clarity on this.
- Will check for documents concerning media outlets. To be clear again: Stinchfied is not refusing to produce documents responsive to AMc's requests. Documents are being withheld under the protection of the work doctrine. If Counsel finds documents that are non-priviledged and not protected under the work product doctrine, counsel will produce those responsive documents if they exist. I am working these as well.

I understand this will be a rolling production, so if there is anything you need more clarity on from

EXHIBIT
6
106

your client that is fine. For the responsive non privilege documents that you do have and that are ready to go could you produce those in 15 days (June 24, 2020)? Please let me know if this is doable. Also please let me know if we need to talk about any of this for clarification.

Thanks
Ian

**Ian Shaw** | Associate
Brewer, Attorneys & Counselors
1717 Main Street, Suite 5900
Dallas, Texas 75201
Office: 214.653.4025
ins@brewerattorneys.com | www.brewerattorneys.com



This communication (including any attachments) is intended for the sole use of the intended recipient, and may contain material that is confidential, privileged, attorney work product, and/or subject to privacy laws. If you are not the intended recipient, you are hereby kindly notified that any use, disclosure, or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please delete this communication, including any copies or printouts, and notify us immediately by return email or at the telephone number above. Brewer, Attorneys and Counselors asserts in respect of this communication all applicable confidentiality, privilege, and/or privacy rights to the fullest extent permitted by law. Thank you.