## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ACKERMAN MCQUEEN, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:19-CV-03016-X** |
| | § | |
| **GRANT STINCHFIELD,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### DEFENDANT'S BRIEF IN SUPPORT OF HIS 12(c) MOTION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

**BREWER STOREFRONT, PLLC**

By: */s/ Ian Shaw*

Ian Shaw
State Bar No. 24117041
ins@brewerattorneys.com
1717 Main Street
Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEY FOR
DEFENDANT GRANT STINCHFIEL**

Defendant Grant Stinchfield ("Stinchfield" or "Defendant") files this brief in support of his 12(c) motion to dismiss Plaintiff's Ackerman McQueen, Inc, ("AMc" or "Plaintiff") claims against him with prejudice.

## I.PRELIMINARY STATEMENT

Stinchfield is a four-time Emmy award-winning journalist who for decades has reported on controversial issues that earned him the respect of his audience and his peers. In fact, throughout decades of journaling, he has never been sued—until now.

In 2019, a dispute arose between the National Rifle Association ("the NRA") and AMc over the digital platform: NRA TV.[1] Stinchfield—a former employee at AMc—witnessed AMc's conduct and wrote an affidavit which he supplied to the NRA. His affidavit explained what he observed regarding the distorted NRA TV analytics that were presented to the NRA and AMc's sudden critique of NRA programs like School Shield and Carry Guard. The NRA served Stinchfield's affidavit in connection with its Second Set of Requests for Admissions on December 12, 2019.

Apparently unhappy with what Stinchfield stated under oath, AMc filed this lawsuit against Stinchfield for defamation and business disparagement.  However, this lawsuit is barred because Stinchfield's affidavit is protected by litigation privilege. Thus, AMc's claims against Stinchfield should be dismissed with prejudice.

## II.LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings, "[a]fter the pleadings are closed–but early enough not to delay trial.[2]  A Rule 12(c) motion "is designed to dispose of

---

[1] *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[2] Fed.R.Civ.P. 12(c).

cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[3] A claim may be dismissed pursuant to Rule 12(c) if successful affirmative defense appears on the face of the pleadings. "Even if [a party] fails to plead the elements of an affirmative defense, judgment on the pleadings under Rule 12(c) is appropriate if judicially noticeable facts and materials, in conjunction with the plaintiff's pleadings, establish a successful affirmative defense."[4]

Under Texas law, publications made in the course of judicial and quasi-judicial proceedings are absolutely privileged.[5] The scope of the absolute privilege extends to all statements made in the course of the proceeding, whether made by the judges, jurors, counsel, counsel, parties, or witnesses, and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case.[6]

### III. FACTUAL BACKGROUND

A. **NRA TV's Viewership Numbers Aren't As AMc Claims.**

During the three years of NRA TV's existence, there were thirteen meetings that occurred between AMc and the NRA to discuss NRA TV's viewership analytics.[7] In each meeting AMc assured the NRA that the numbers were growing, and the platform was a huge success.[8] After a thirty-year partnership between the two companies, the NRA believed AMc and increased NRA

---

[3] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)

[4] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).

[5] *Charalmbopoulos v Grammer*, No. 3:14–CV–2424–D, WL 2451182 *3 (N.D.Tex. 2015).

[6] *Id.*

[7] Ex. A. *See* NRA's First Amended complaint ¶ 28. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[8] *Id.* at ¶¶ 28-29.

TV's annual budget each year at the request of AMc.[9] But the numbers that were presented to the NRA were misleading.[10] They were not as great as AMc had led on.[11] They didn't tell the whole story.[12]

Stinchfield became aware of the distorted viewership numbers.[13] As he observed NRA TV's viewership analytics including the analytics on his own show, he noticed that his live viewership numbers were extremely low, and the NRA was not aware of this.[14] Instead the NRA was being presented viewership numbers in the high tens of millions.[15]

**B.**    **"I Believe These Metrics Were Distorted And Did Not Tell The Whole Story Of How Few Actual Live Views We Had."**

In 2019, the NRA became aware of AMc's faulty billing and NRA TV's overachieving viewership numbers.[16] And in the summer of 2019, the NRA shut NRA TV down. [17]

The NRA filed lawsuits—one in Texas and one in Virginia—against AMc for misleading them into believing that NRA TV was a success when it wasn't.[18] During the ongoing litigation in Texas, AMc filed its Amended Answer and its Amended Counterclaim and Third Party

---

[9] *Id.*

[10] Ex. B. Stinchfield's Affidavit ¶ 8.

[11] *See* NRA's First Amended complaint ¶¶ 29-31. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[12] *Id*. See also Stinchfield's Affidavit ¶ 8.

[13] Stinchfield's Affidavit ¶ 8.

[14] *Id.*

[15] *Id. See also* NRA's First Amended complaint ¶¶ 29-31. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[16] *Id*. at ¶¶ 45-46. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[17] *Id.*

[18] *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G and *National Rifle Association of America v. Ackerman McQueen, Inc., et al.*, Case Nos. CL19002067, CL19001757, and CL19002886.

Complaint.[19] In its pleading, AMc claims that it had serious doubts about the NRA's direction under LaPierre's leadership.[20] It further claims that the Carry Guard program was mismanaged by the NRA and that AMc did not want to be part of a "scheme." [21]

To counter these false allegations, Stinchfield wrote an affidavit, which he supplied to the NRA that explained what he observed while working at AMc.[22] The affidavit was served in discovery with the NRA's Second Set of Request for Admissions on December 12, 2019.[23] "I have glimpsed at PowerPoint presentations, digital dashboards, and other "metrics" which I understand were presented by Ackerman executives to describe the performance and viewership of NRA TV,"[24] wrote Stinchfield. "I came to understand that these figures were being developed by Ackerman for consumption by NRA leadership.[25] I believe these metrics were distorted and did not tell the whole story of how few actual live viewers we had."[26] He further states, "I have reviewed the allegations in this case and find many made by Ackerman to be disingenuous.[27] For example, Ackerman now disparages Carry Guard and School Shield.[28] Ackerman was an enthusiastic proponent of both programs. In fact, I was encouraged by Ackerman to actively promote both programs."[29]

---

[19] Ex C. AMc's Amended Answer and Amended Counterclaim and Third-party Complaint. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[20] *Id* at ¶¶ 44-45 page 91.

[21] *Id.*

[22] *See* Stinchfield's Affidavit.

[23] Ex. D. NRA's Second Set of Requests for Admissions. *National Rifle Association v. Ackerman McQueen, Inc. et, al.*, Case No. 3:19-cv-02074-G.

[24] Stinchfield's Affidavit ¶ 8.

[25] *Id.*

[26] *Id.*

[27] Stinchfield's Affidavit ¶ 9.

[28] *Id.*

[29] *Id.*

About a week after the NRA served AMc with its Second Set of Requests for Admissions along with Stinchfield's affidavit, the Daily Beast published an article about Stinchfield's affidavit and the highly-publicized lawsuit between the NRA and AMc.[30] Stinchfield's affidavit offended AMc, and in retaliation, AMc sued Stinchfield for defamation and business disparagement.

## IV. ARGUMENT

AMc contends in its original complaint that "the impetus for Defendant's statement in this regard is a pleading filed by AMc in a separate lawsuit involving the NRA, LaPierre, AMc, and others."[31] AMc, by its own admission, initiated this lawsuit against Stinchfield because Stinchfield's affidavit was written on behalf of the NRA in response to claims AMc made in its pleading. As a result, AMc admits that its filing is an attack on Stinchfield's affidavit. AMc's claims against Stinchfield should be barred by litigation privilege as a matter of law and as a matter of public policy. Therefore, AMc's claims should be dismissed with prejudice

### 1.     As a matter of law, AMc's claims should be barred by ligation privilege.

Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel.[32]

Stinchfield wrote his affidavit on behalf of the NRA in a pending litigation against AMc. Because AMc disliked what Stinchfield stated in his affidavit, AMc filed this lawsuit against Stinchfield ignoring the protections offered to witnesses during litigation. Stinchfield's statements were not only made during a lawsuit but they were made in a sworn affidavit, which is protected

---

[30] Ex. E. Julia Arciga, NRA TV Wanted to Become a 24/7 Newsroom Using NRA Funds: Ex-Host, Daily Beast, December 18, 2019.

[31] *See* ECF 1 AMc's original complaint against Stinchfield filed December 20, 2019, ¶32.

[32] *Reagan v. Guardian Life Ins. Co.,* S.W.2d 909, 912 (Tex.1942).

by the litigation privilege. As a matter of law, AMc's claims should be barred by litigation privilege and dismissed with prejudice.

> 2. **As a matter of public policy, AMc's claims should be barred by litigation privilege.**

Because defamation and business disparagement are state law claims as well as the defenses that counter it, courts look to the Texas Supreme Court for guidance. The Texas Supreme court has held that "the litigation privilege is one of public policy "founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual."[33] The absolute privilege for judicial proceedings is also based on a public policy that "the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation."[34]

As a matter of public policy this court should continue to protect the voices of those who speak out—like Stinchfield—against the wrongdoers without having to face legal ramifications. Going against public policy would only create a precedent that would hamper the litigation process and prevent attorneys from getting witnesses to come forward and speak their truth. The court should not veer off from the consistency that it has maintained in advocating for witnesses and their protection. Therefore, AMc's claims should be barred by litigation privilege as a matter of public policy and dismissed with prejudice.

## V. CONCLUSION

As a matter of law and public policy, litigation privilege has offered protections for witnesses to come forward without the fear of becoming a victim of a grueling scary litigation

---

[33] *See James v. Brown*, 637 S.W.2d 914, 917–18 (Tex.1982).

[34] *Id.*

6

process like Stinchfield has encountered here. The court cannot allow AMc to set a precedent that will put fear in witnesses to come forward and voice their truth.

Stinchfield did exactly what Courts across this nation want them to do: speak up and point out wrongdoings. But by speaking up, Stinchfield fell victim to a vile and vengeful lawsuit. And as stated explicitly above, Stinchfield should not be punished for his statements in his affidavit because AMc was unhappy with what was said during a highly-publicized litigation.

Case law clearly lays out that witnesses' statements in an affidavit during a pending litigation are protected by litigation privilege. Therefore, this court should continue its stance on protecting witnesses and their voices, dismiss AMc's claims against Stinchfield with prejudice, and award Stinchfield all the appropriate remedies.

September 14, 2020                              Respectfully submitted,


                                               **BREWER STOREFRONT, PLLC**

                                               By:*/s/ Ian Shaw*
                                                   Ian Shaw
                                                   State Bar No. 24117041
                                                   ins@brewerattorneys.com
                                                   1717 Main Street
                                                   Suite 5900
                                                   Dallas, Texas 75201
                                                   Telephone: (214) 653-4000
                                                   Facsimile: (214) 653-1015

                                                   **ATTORNEY FOR**
                                                   **DEFENDANT GRANT STINCHFIELD**

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically served via the Court's electronic case filing system upon all counsel of record on this 14th day of September 2020.


*/s/Ian Shaw*
Ian Shaw