IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., | § | |
| | § | |
| v. | § | Case No. 3:19-cv-03016-X |
| | § | |
| GRANT STINCHFIELD | § | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Ackerman McQueen, Inc. ("**AMc**"), files this *Brief in Support of its Motion*

*to Compel* (the "**Motion**") (doc. 21).

**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFF
ACKERMAN MCQUEEN, INC.**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................ii

TABLE OF AUTHORITIES .....................................................................................................iii

FACTS ....................................................................................................................................... 1

   A.  Background. .................................................................................................................. 1

   B.  AMc's Discovery Requests. ........................................................................................ 3

ARGUMENT AND AUTHORITIES......................................................................................... 5

   A.  The Court should overrule Stinchfield's objections based on relevance and
   burdensomeness. .............................................................................................................. 5

   B.  The Court Should Overrule Stinchfield's Objections Under the Attorney-Client
   Privilege and Work Product Doctrine. .............................................................................. 9

     i.  Scope of the attorney-client privilege and work product doctrine. ....................... 9

     ii.  Legal standard for asserting privilege. ................................................................. 13

     iii.  Stinchfield's assertions of privilege are improper. ............................................. 14

     iv.  Alternative request to compel privilege log and in camera review. ..................... 17

PRAYER.................................................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Areizaga v. ADW Corp.*, 314 F.R.D. 42 (N.D. Tex. 2016) ......................................................... 13

*Blum v. Spectrum Rest. Grp.-Emples. Grp. Life & Supplemental Life Plan*, Nos. 4:02-CV-92, 4:02-CV-98, 2003 U.S. Dist. LEXIS 2499 (E.D. Tex. Feb. 14, 2003) ............................ 10, 15

*Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 181063 (S.D. Tex. Oct. 10, 2018) ................................................................................................................................... 11

*Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53 (S.D.N.Y. 2000) ............................ 10

*Cole v. Collier*, No. 4:14-CV-1698, 2020 U.S. Dist. LEXIS 94320 (S.D. Tex. May 28, 2020) . 14

*Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 U.S. Dist. LEXIS 121536 (N.D. Tex. Aug. 29, 2014) ........................................................................................................ 8

*EEOC v. BDO USA, LLP*, 876 F.3d 690 (5th Cir. 2017) ............................................................. 9

*EEOC v. Jamal & Kamal, Inc.*, No. 05-2667, 2006 U.S. Dist. LEXIS 66294 (E.D. La. Sep. 18, 2006) ...................................................................................................................................... 12

*Gilmore v. Stalder*, 2008 U.S. Dist. LEXIS 39822, 2008 WL 2097162 (W.D. La. May 16, 2008) ...................................................................................................................................... 11

*Hanan v. Crete Carrier Corp.*, No. 3:19-cv-149-B, 2019 U.S. Dist. LEXIS 193409 (N.D. Tex. Nov. 6, 2019) ........................................................................................................................... 8

*Harding v. Cty. of Dallas*, No. 3:15-CV-0131-D, 2016 U.S. Dist. LEXIS 177937 (N.D. Tex. Dec. 23, 2016) .......................................................................................................................... 9

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) ........................................................ 6

*Hudson v. General Dynamics Corp.*, 186 F.R.D. 271 (D. Conn. 1999) .................................... 10

*In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001) .......................................................... 13

*In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789 (E.D. La. 2007) ........................................ 9

*Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303 (E.D. Mich. Nov. 17 2000) ......... 12, 14, 16

*Lafleur v. Bankers Life & Cas. Co.*, No. 1:10-CV-614-TH, 2012 U.S. Dist. LEXIS 204446 (E.D.

Tex. Jan. 19, 2012) ................................................................................... 14

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235 (N.D. Tex. 2016) 5

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ............... 5

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005) ................................. 5

*Schipp v. Gen'l Motors Corp.*, 457 F.Supp. 2d 917 (E.D. Ark. 2006) ...................................... 11

*Tuttle v. Tyco Elecs. Installation Servs.*, 2007 U.S. Dist. LEXIS 95527, 2007 WL 4561530
   (S.D. Ohio Dec. 21, 2007) ..................................................................... 11

*United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) ...................................... 13

*United States v. Kelly*, 569 F.2d 928 (5th Cir. 1978) ........................................... 9, 16

*United States v. Nobles*, 422 U.S. 225 (1975) ................................................ 11

*United States v. Zolin*, 491 U.S. 554 (1989) ............................................... 14

*Walker v. George Koch Sons, Inc.*, No. 2:07cv274 KS-MTP, 2008 U.S. Dist. LEXIS 81919
   (S.D. Miss. 2008) ......................................................................... 11, 14

*Weatherly v. Pershing LLC*, No. 3:14-CV-366-N-BG, 2015 U.S. Dist. LEXIS 187422 (N.D.
   Tex. Oct. 16, 2015) ..................................................................... 13, 14

*Young v. California*, 2007 U.S. Dist. LEXIS 97485, 2007 WL 2900539 (S.D. Cal. Oct. 1, 2007)
   ........................................................................................ 11

## RULES

Fed. R. Civ. P. 26 ............................................................................ 4, 11, 15

Fed. R. Civ. P. 34 .............................................................................. 5

## FACTS

### A.    Background.

1.    AMc is a public relations and marketing company who, for nearly 40 years, provided public relations, crisis management, marketing, event, and media services for the National Rifle Association of America ("***NRA***").  Compl. (doc. 1) at ¶9.  Grant Stinchfield ("***Stinchfield***") is a former employee of AMc who hosted an online current events program on the NRA's digital media platform, NRATV.  Compl. at ¶5.

2.    AMc has sued Stinchfield for defamation and business disparagement arising out a written statement that Defendant signed and disseminated to the press that contains false allegations regarding AMc.  Compl. at ¶¶40-56; *see* also Appendix at App. 6-8, 32, 38.  The statement was ostensibly prepared by the NRA's counsel as an affidavit to be filed in connection with related litigation the NRA filed against AMc in the Northern District of Texas (the "***NRA Action***"),[1] but the so-called affidavit[2] was never filed with any court or other tribunal.  Compl. at ¶20.  Instead, AMc has alleged that the affidavit was created for the sole purpose of being sent directly to the media in order to inflict reputational damage on AMc.  *Id.*

---

[1] *NRA v. AMc, et al.*, No. 3:19-cv-02074-G (N.D. Tex.) (filed Aug. 30, 2019).

[2] The so-called affidavit does not contain a jurat at the end.  An affidavit without a jurat is not an "affidavit" under Texas law.  *Stokes & Spiehler Onshore, Inc. v. Ogle (In re Wave Energy, Inc.)*, 467 Fed. Appx. 248, 250-51 (5th Cir. 2012).

3.    Indeed, since beginning a parade of lawsuits against AMc, the NRA has been engaged in a non-stop smear campaign against AMc in the media,[3] led by its counsel, William A. Brewer III ("*Brewer*") and Brewer Attorney & Counselors (the "*Brewer Firm*")—a law firm that touts its use of the media to intentionally sway the "court of public opinion" in its clients' favor.[4] Compl. at ¶¶ 19, 35-39.

4.    The Brewer Firm employs an entire division of non-attorney employees who handle public-relations matters, crisis management, and political strategy.[5] Compl. at ¶¶ 35-39.  The Managing Director of this "Public Affairs" group, Travis Carter,[6] sent the document directly to members of the press, including a reporter with *The Daily Beast* and another reporter at *Newsweek*.[7]  The next day, *The Daily Beast* ran an article under the headline "NRATV Wanted to Become a 24/7 Newsroom Using NRA Funds: Ex-Host," which included numerous quotes that came directly from Stinchfield's written statement.[8] Compl. at ¶36.  *Newsweek* ran a similar story the same day that quoted directly

---

[3] *See, e.g.*, NRA Action, Doc. 79, Ex. A (Brief in Support of Def.'s Mot. to Disqualify Pl.'s Counsel) at ¶¶ 58-59 and App'x A (outlining numerous media statements against AMc).

[4] *See* Mark Donald, *Rambo Justice*, DALLAS OBSERVER (Mar. 19 1998), available at https://www.dallasobserver.com/news/rambo-justice-6402157.

[5] *See* Public Affairs, BREWER ATTORNEYS & COUNSELORS, https://www.brewerattorneys.com/the-art-of-advocacy

[6] *See* Our People, BREWER ATTORNEYS & COUNSELORS, http://brewerattorneys.com/team-1.

[7] *See* documents produced by Stinchfield as GRANT0046 and GRANT0048, included in the Appendix at App. 32 and 33-38.

[8] *See* Julia Arciga, *NRATV Wanted to Become a Real Newsroom Using NRA Funds Says Ex-Host Grant Stinchfield*, DAILY BEAST (Dec. 18, 2019), available at https://www.thedailybeast.com/nratv-wanted-to-become-a-real-newsroom-using-nra-funds-says-ex-host-grant-stinchfield.

from Stinchfield's written statement.[9]  *Id.*  Thus, it appears that Stinchfield's written statement was not executed in a good faith as a legal document to be filed with a court, but as a mechanism for feeding false information to the press cloaked with the appearance of legitimacy as a legal document that had been filed with a court.

**B.      AMc's Discovery Requests.**

5.      On January 10, 2020, AMc served its First Set of Interrogatories and First Request for Production on Stinchfield.  The discovery requests primarily focused on Stinchfield's and the Brewer Firm's creation and public dissemination of Stinchfield's written statement, as well as Stinchfield's net worth.  On February 10, 2020, Stinchfield served his responses to AMc's discovery requests ("***Defendant's Response***"), a true and correct copy of which is included in the Appendix at App. 9-13.

6.      This dispute concerns the following discovery requests:

      i.      **<u>Interrogatory No. 11</u>** – This interrogatory asks Stinchfield to identify all persons to whom he or his counsel disseminated Stinchfield's written statement.  Appendix at App. 17.  Stinchfield has indicated that he intends to amend his response and answer this interrogatory, but has not done so yet.

---

[9] *See Ashton Stockler, NRATV Creator Threatens "Legal Action" Against Former Host Over "Fabrications,"* Newsweek (December 18, 2019), available at https://www.newsweek.com/nratv-ackerman-mcqueen-nra-guns-1477939.

    ii.   **Request for Production ("RFP") No. 2** – This request seeks all drafts and prior versions of the Stinchfield's written statement.  Appendix at App. 20.  The identification number on the bottom of Stinchfield's statement indicates that it is the eighth version of the so-called affidavit.  *See* Appendix at pp. 6-8 (displaying document number "482306952-0046, **v. 8**").

    iii.   **RFP No. 3** – This request seeks all communication between Stinchfield and any member of the Brewer Firm that occurred *prior to* Stinchfield's retention of the Brewer Firm and/or the Brewer Storefront as counsel.[10]  Appendix at App. 21.

    iv.   **RFP No. 4** - This request seeks production of communications between Stinchfield and any non-attorney employee in the Brewer Firm's public-relations group.  *Id*.

    v.   **RFP Nos. 17-19** – These requests seek information related to Stinchfield's net worth, including tax returns, checking, savings, and brokerage account statements, and personal financial statements.  Appendix at App. 26-27.  AMc is seeking exemplary damages in this case.  Compl. at ¶58.c.

---

[10] Defendant's answer was signed by William A. Brewer III on behalf of the Brewer Firm.  Since then, Defendant's pleadings, discovery requests, discovery responses, etc. have been signed by Ian Shaw on behalf of Brewer Storefront, PLLC, the self-professed pro bono arm of the Brewer Firm.

Because Stinchfield's objections to these discovery requests are improper, the Court should overrule them and compel Stinchfield to properly respond to each of the requests.

## ARGUMENT AND AUTHORITIES

7.      Discovery may be obtained about any matter that is not privileged, relevant to any party's claims or defenses, and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Furthermore, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed."  *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).  As will be discussed more fully below, each of the disputed discovery requests seeks information that is relevant and proportional to the needs of the case.  Thus, Stinchfield should be ordered to respond.  Stinchfield's objections lack merit and should all be overruled.

**A.      The Court should overrule Stinchfield's objections based on relevance and burdensomeness.**

8.      With regard to Interrogatory No. 11 and RFP Nos. 2-4 and 17-19, Stinchfield has objected that each of these requests is unduly burdensome and overly broad.  These objections should be overruled.

9.      "A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016) (internal citation omitted); see also *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  Furthermore,

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL – PAGE 5**

"a party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller v. City of Dallas,* 303 F.R.D. 466, 485 (N.D. Tex. 2014).  The 2015 changes to Rule 34 are consistent with *Heller*'s holding, requiring that an objection asserted in response to a request for production "must state whether any responsive materials are being withheld on the basis of that objection." *See* Fed. R. Civ. P. 34(b)(2)(C).

10.    Stinchfield cannot meet his burden to show that any the disputed requests are overly broad, burdensome, or oppressive.  Furthermore, he has failed to comply with Rule 34 by failing to indicate what responsive materials, if any, are being withheld on the basis of his objections.  Thus, his objections should be overruled.

11.    **Interrogatory No. 11** – This interrogatory asks Stinchfield to identify all persons to whom he or his counsel disseminated Stinchfield's written statement. Stinchfield has objected to this interrogatory as "unduly broad and overly burdensome since it requires identification of 'all *documents*,'" which is nonsensical on its face—the interrogatory does not even ask for identification of documents.  Thus, the objection should be overruled.

12.    **RFP No. 2** – This request seeks all drafts and prior versions of Stinchfield's written statement.  The identification number on the bottom of the document indicates

that it is the eighth version of the so-called affidavit.  *See* Appendix at App. 8 (displaying

document number "482306952-0046, **v. 8**").  This request calls for the production of

versions one through seven.

13.     Stinchfield objects that the request is "unduly broad and overly

burdensome since it requires production of '*all documents*,'" which similarly makes no

sense in this context.  Producing seven documents is not unduly burdensome.  The drafts

of the written statement, coupled with the communications requested in RFP Nos. 3 and

4 discussed below, will enable AMc to test Stinchfield's perception and credibility, as they

will show what changes were made in the seven prior iterations of the written statement,

why, and at whose request.  Thus, they are relevant and ought to be produced.

14.     **RFP No. 3** – This request seeks all communication between Stinchfield and

any member of the Brewer Firm that occurred *prior to* his retention of the Brewer Firm as

counsel, which, according to Stinchfield's own admission, did not occur until sometime

on or after January 2, 2020.  *See* Appendix at App. 4-5.  Defendant again lodges his

boilerplate objection: "unduly broad and overly burdensome since it requires production

of '*all documents*.'"  Stinchfield signed the written statement on or about December 10,

2019.  Presumably there were some communications that took place before then given

that it is the eighth version of the written statement.  It seems unlikely that the volume of

communications could have possibly risen to the level of being "unduly burdensome" to

produce in only a few weeks.

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL – PAGE 7**

15.   **RFP No. 4** – This request seeks all documents and communications between Stinchfield and any member of the public-relations division at the Brewer Firm regarding Stinchfield's written statement.  Once again, Stinchfield objects that the request is overly broad and burdensome.  The written statement is plainly at issue in this action and, therefore, the request is not overly broad.  With regard to the alleged burdensomeness of the request, it is unlikely that the number of documents and communications he exchanged with the public-relations division at the Brewer Firm could reach the requisite amount to constitute an undue burden in such a short time.

16.   **RFP Nos. 17-19** – These requests seek information related to Stinchfield's personal net worth, including tax returns, bank accounts, and financial statements. Stinchfield objects that this request is "unduly burdensome and overbroad" due to his assertion that this information is irrelevant.  AMc is seeking exemplary damages in this case, making Stinchfield's financial condition and net worth relevant.  *See Hanan v. Crete Carrier Corp.*, No. 3:19-cv-149-B, 2019 U.S. Dist. LEXIS 193409, at *22 (N.D. Tex. Nov. 6, 2019) (permitting discovery concerning net worth as being relevant and proportional to the needs of the case given the plaintiff's claim for exemplary damages); *Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 U.S. Dist. LEXIS 121536, 2014 WL 4262036, at *2 (N.D. Tex. Aug. 29, 2014) ("A defendant's net worth is relevant in a suit involving exemplary damages.").  Thus, the request is not overly broad.

17.     Accordingly, AMc respectfully requests the Court to overrule Stinchfield's objections based on the alleged overbreadth and burdensomeness of AMc's requests and to compel Stinchfield to provide all of the requested information and documents.

**B.      The Court Should Overrule Stinchfield's Objections Under the Attorney-Client Privilege and Work Product Doctrine.**

18.     Stinchfield has also asserted that certain documents and information are shielded from discovery under the attorney-client privilege and work-product doctrine. AMc asks the Court to overrule these objections or, in the alternative, compel Stinchfield to produce a privilege log and submit the disputed documents for an *in camera* inspection so the Court may properly adjudicate Stinchfield's assertions of privilege.

### i.      *Scope of the attorney-client privilege and work product doctrine.*

19.     The attorney-client privilege protects from disclosure communications from the client to the attorney made in confidence for the purpose of obtaining legal advice. *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017); *Harding v. Cty. of Dallas*, No. 3:15-CV-0131-D, 2016 U.S. Dist. LEXIS 177937, at *26 (N.D. Tex. Dec. 23, 2016). But, the privilege does not protect documents and other communications simply because one party is an attorney. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Rather, the person to whom the communication is made must be a member of the bar or his subordinate, and must be acting as a lawyer in connection with the communication at issue. *See United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 807 (E.D. La. 2007) (noting that when lawyers

make comments about technology, science, public relations, or marketing, those communications are not protected by the privilege unless the party demonstrates that those comments are *primarily* related to legal assistance); *see also Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists, or investigators [or, here, a public relations firm] on their payrolls . . . should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.").

20.     Furthermore, courts have held that witness statements and related communications sent to an attorney by a third-party witness are not protected by the attorney-client privilege, even when those third-party witnesses later became clients of the attorney.  *See, e.g., Hudson v. General Dynamics Corp.*, 186 F.R.D. 271, 277 (D. Conn. 1999).  When communications with an attorney are exchanged prior to the formal beginning of an attorney-client relationship, the attorney-client privilege cannot be applied retroactively where the original communication was not made for the purpose of seeking legal advice.  *Id.*  If the party asserting the privilege was not a client or seeking to become a client, the attorney-client privilege does not apply.  *See id.; see also Blum v. Spectrum Rest. Grp.-Emples. Grp. Life & Supplemental Life Plan*, Nos. 4:02-CV-92, 4:02-CV-98, 2003 U.S. Dist. LEXIS 2499, at *5 (E.D. Tex. Feb. 14, 2003) (holding that communications with fact witness not protected by attorney-client privilege or work

product doctrine).   In other instances, emails between a non-party witness and an attorney were not protected by the attorney-client privilege because they did not contain communications made to secure legal services.  *See, e.g., Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 181063, at *6–*9 (S.D. Tex. Oct. 10, 2018).

21.    With regard to work-product, this doctrine generally applies only to documents and tangible things that are prepared in anticipation of litigation or for trial. *See* Fed. R. Civ. P. 26(b)(2)(A).   The work-product doctrine affords protection to the mental impressions, beliefs, opinions, and thoughts of an attorney acting on behalf of his client.  *See United States v. Nobles*, 422 U.S. 225, 237–38 (1975).

22.    The work product doctrine does not apply to affidavits or written statements by non-party witnesses, such as Stinchfield's written statement.  *See, e.g., Blum*, 2003 U.S. Dist. LEXIS 2499, at *6-*7; *Walker v. George Koch Sons, Inc.*, No. 2:07cv274 KS-MTP, 2008 U.S. Dist. LEXIS 81919, at *17-*19 (S.D. Miss. Sept. 18, 2008) ("The fact that counsel for the plaintiffs drafted the Affidavits (as is generally the case for affidavits prepared for litigation) does not make them attorney work product immune from disclosure."); *Gilmore v. Stalder*, 2008 U.S. Dist. LEXIS 39822, 2008 WL 2097162, at *4 (W.D. La. May 16, 2008) (rejecting work product privilege for affidavits containing no attorney impressions but merely stating facts); *Tuttle v. Tyco Elecs. Installation Servs.*, 2007 U.S. Dist. LEXIS 95527, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) ("[a]ffidavits are normally not protected by the work product doctrine"); *Young v. California*, 2007 U.S. Dist. LEXIS

97485, 2007 WL 2900539, at *1 (S.D. Cal. Oct. 1, 2007) (refusing to apply work-product protection to witness questionnaires); *Schipp v. Gen'l Motors Corp.*, 457 F.Supp. 2d 917, 924 (E.D. Ark. 2006) (holding that "non-party witness statements are neither privileged nor work product and must be produced"); *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306-07 (E.D. Mich. Nov. 17 2000) (rejecting assertion of work product and noting that an affidavit is supposed to be "a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel.").

23.     Drafts of written statements and related communications do not fall within the protections of the work product doctrine either.  In permitting disclosure of draft affidavits and accompanying communications between counsel and non-party witnesses, one court noted:

> Granted, [the plaintiff] secured these statements [of third-party witnesses]
> in anticipation of litigation.  However, if it now suggests that it may
> interpose the work product doctrine because it then put words in the
> mouths of these third-party affiants as part of its litigation strategy, it
> misperceives the nature of the doctrine.  [The defendant] seeks no more
> than factual statements of these non-party witnesses.  It should not be
> frustrated in its ability to test the perception and credibility of these
> persons.

*Infosystems, Inc.*, 197 F.R.D. at 306-07 (quoting *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prods., Inc.*, 140 F.R.D. 373 (E.D. Wis. 1991)); *see also EEOC v. Jamal & Kamal, Inc.*, No. 05-2667, 2006 U.S. Dist. LEXIS 66294, at *10 (E.D. La. Sep. 18, 2006) (compelling production of draft affidavit of non-party witness).

*ii.   Legal standard for asserting privilege.*

24.    In addition, even where a privilege applies, "[a] blanket assertion of privilege is unacceptable; the party asserting a privilege should prepare a privilege log that provides the requesting party with enough information to test the merits of the privilege claim." *Weatherly v. Pershing LLC*, No. 3:14-CV-366-N-BG, 2015 U.S. Dist. LEXIS 187422, at *8-9 (N.D. Tex. Oct. 16, 2015) (citations omitted); *see also United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). This well-settled proposition is based on the express requirements of Rule 26, which mandates that a party withholding information on the basis of a privilege must "expressly make the claim[] *and* describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

25.    The party asserting privilege "bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Thus, "to support [] assertions of work-product protection or attorney-client privilege [and] withholding certain documents or ESI from production, Plaintiff must describe the withheld information, documents, or ESI by submitting to Defendant's counsel a 'privilege log' that complies with Federal Rule of Civil Procedure 26(b)(5)(A)." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 439-40 (N.D. Tex. 2016). The purpose of the privilege log is "to enable opposing parties and the court to determine whether each element of the asserted privilege is satisfied." *Weatherly*, 2015 U.S. Dist. LEXIS 187422, at *9 (citations omitted).

Thus, a privilege log should include "the document's date of creation, author, title or caption, addressee and each recipient, and general purpose for creation, as well as the particular privilege relied upon" to generally satisfy Rule 26. *Id*.

26.     Of course, in instances where a party refuses to produce documents under a claim of privilege, and where the privilege log is insufficient to determine whether the documents are privileged or not, then the court is within its discretion to conduct an *in camera* inspection of the documents to adjudicate privilege. *See United States v. Zolin*, 491 U.S. 554, 568–69 (1989); *Cole v. Collier*, No. 4:14-CV-1698, 2020 U.S. Dist. LEXIS 94320, at *12 (S.D. Tex. May 28, 2020); *Lafleur v. Bankers Life & Cas. Co.*, No. 1:10-CV-614-TH, 2012 U.S. Dist. LEXIS 204446, at *5 (E.D. Tex. Jan. 19, 2012).

### iii.     Stinchfield's assertions of privilege are improper.

27.     Stinchfield improperly claims that the information responsive to RFP Nos. 2-4 is protected by the attorney-client privilege and work-product doctrine.  RFP No. 2 seeks production of all drafts of Stinchfield's written statement.  Neither the work product doctrine nor the attorney-client privilege applies.

28.     Stinchfield's so-called affidavit is no different than any other witness statement or questionnaire that purports to set out the underlying facts of the lawsuit.  It should therefore be devoid of any legal strategy or attorney mental impressions that would otherwise be protected by the work-product privilege. *See Walker*, 2008 U.S. Dist. LEXIS 81919, at *17-19; *Infosystems, Inc.*, 197 F.R.D. at 306-07.  The attorney-client privilege

does not apply because Stinchfield's written statement was not a confidential communication with an attorney for the purpose of securing legal advice. Moreover, this document was created and executed before an attorney-client relationship began between Stinchfield and his current counsel, further precluding application of the attorney-client privilege per the cases cited above.

29.     RFP No. 3 seeks production of all communications between Stinchfield and the Brewer Firm concerning Stinchfield's written statement that pre-date Stinchfield's retention of the Brewer Firm or the Brewer Storefront as his counsel in this action. Stinchfield executed his so-called affidavit on December 10, 2019. AMc filed suit against Defendant on December 20, 2019, which is presumably the first date that Stinchfield became aware that he even needed representation.[11] Yet even as of January 2, 2020, Stinchfield firmly maintained that he had not yet hired a lawyer and wanted to try to resolve matters himself. *See* Appendix at App. 4-5. Accordingly, any communications that occurred prior to the date Stinchfield approached the Brewer Firm about representing him in this matter were simply the Brewer Firm's communications with a third-party witness – communications that are not afforded protection under the attorney-client privilege. *See Blum*, 2003 U.S. Dist. LEXIS 2499, at *5.

30.     Likewise, these communications should not protected by the work-product doctrine because they theoretically should relate solely to the underlying facts stated in

---

[11] *See* Doc. 1, Pl.'s Original Compl.

Stinchfield's affidavit, and any attempt by counsel to "put words in the mouth" of Stinchfield would not be protected by the work-product privilege. *See Infosystems*, 197 F.R.D. at 306-07; *see also Walker*, 2008 U.S. Dist. LEXIS 81919, at *17-19. AMc is thus entitled to theses communications.

31.     RFP No. 4 seeks production of communications between Stinchfield and any non-attorney employee in the Brewer Firm's public-relations group.   These communications are highly relevant.  As Stinchfield's written statement was provided to the media soon after its execution, exchanges between Stinchfield and the public-relations group are likely to reveal the level of knowledge and intent that both Stinchfield and his counsel had regarding the intended use of the written statement and the manner and method in which it would be disseminated publicly.   These communications are not protected by the attorney-client privilege because, as the Public Affairs group employs only non-lawyers who are not subordinates of any lawyers in a legal capacity (as distinguished from, say, legal assistants or paralegals), these individuals are not involved with the provision of legal services, and therefore, any communications could not possibly be for the purpose of obtaining or providing legal advice. *See Kelly*, 569 F.2d at 938; *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 807; *Calvin Klein*, 198 F.R.D. at 55.

32.     These communications with non-lawyer public-relations employees are not protected by the work-product doctrine for the same reason.   These non-lawyer employees simply do not—and cannot—engage in the type of legal strategy and other

attorney mental processes that fall within this privilege.  *See Nobles,* 422 U.S. at 237–38.

Furthermore, the services they provided in this particular instance – assisting Stinchfield

in disseminating a defamatory press release under the guise of a court document – were

ordinary public relations services unrelated to any attorney's mental process.  *Calvin*

*Klein*, 198 F.R.D. at 54-55 (PR firm's making calls to various media to comment on

developments in the litigation and "finding friendly reporters" were ordinary public

relations advice not protected by attorney-client privilege or work product doctrine, even

if also helpful to attorney in formulating legal strategy); *see also* Fed. R. Civ. P. 26(b)(2)(A).

> ### iv.   *Alternative request to compel privilege log and in camera review.*

33.   Stinchfield might attempt to create a revisionist history of the time period

before, during, and after the execution of his written statement by arguing, for example,

that he anticipated that he would be sued by AMc as a result of the statement and that he

began seeking legal advice from the Brewer Firm from day one.  In the event Stinchfield

makes such an argument in response to this Motion, AMc alternatively asks that the

Court compel Stinchfield to produce a privilege log for all documents for which he claims

a privilege.  AMc further asks that the Court order an *in camera* inspection of these

documents and communications so the merits of Stinchfield's privilege claims may be

fairly adjudicated.

## PRAYER

For the foregoing reasons, AMc respectfully asks this Court to grant its Motion; overrule Stinchfield's objections and compel Stinchfield to answer Interrogatory No. 11 and produce all documents responsive to Requests for Production Nos. 2-4 and 17-19; and grant AMc any further relief, at law or in equity, to which it may be justly entitled.

Dated: September 22, 2020.

Respectfully submitted,

*/s/ Brian Vanderwoude*

**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com

**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR PLAINTIFF
ACKERMAN MCQUEEN, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

/s/ Brian Vanderwoude
J. Brian Vanderwoude