IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC. | § | |
| | § | |
| v. | § | Case No. 3:19-cv-03016-X |
| | § | |
| GRANT STINCHFIELD | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

Plaintiff, Ackerman McQueen, Inc. ("*AMc*"), files its Response to *Defendant Grant Stinchfield's 12(c) Motion to Dismiss Plaintiff's Claims with Prejudice* (doc. 18), as follows:

**INTRODUCTION AND SUMMARY**

Defendant signed a written statement that contained false and disparaging statements regarding AMc and its business and sent it directly to members of the press as part of an ongoing smear campaign being waged by the National Rifle Association of America, Inc. ("*NRA*") against AMc. Although styled as an "affidavit" in support of litigation between the NRA and AMc, no doubt in an effort to cloak it with the appearance of legitimacy as a court record, the so-called affidavit was never filed with any court or other tribunal.[1] Instead, it was sent directly to members of the press. Thus, the written statement is not covered by the judicial proceedings privilege. The fact that a person has

---

[1] The so-called affidavit is not truly an "affidavit" because it does not contain a jurat at the end. An affidavit without a jurat is not an "affidavit" under Texas law. *Stokes & Spiehler Onshore, Inc. v. Ogle (In re Wave Energy, Inc.)*, 467 Fed. Appx. 248, 250-51 (5th Cir. 2012).

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C) – PAGE 1**

a privilege to make defamatory statements before a court does not mean the person is also free to do so to third parties, such as the news media. Thus, Defendant's motion to dismiss should be denied.

## FACTUAL BACKGROUND

AMc, an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma, is a public relations and marketing company who, for nearly 40 years, provided public relations, crisis management, marketing, event, and media services for the National Rifle Association of America, Inc. ("**NRA**"). Complaint (Doc. 1) at ¶¶ 4, 9. Beginning in the early 2000s, AMc assisted the NRA in the development of a NRA-branded media platform, in addition to placing advertisements in traditional media. Compl. at ¶11. It began with the NRA's webcast, NRA Live, in 2000 and grew to include a news network, various targeted networks, and ultimately a "Super Channel" that could be streamed online. Compl. at ¶¶ 11-12. In 2016, AMc and the NRA launched NRATV, an expanded version of the platform that brought most of these ventures under the same umbrella and was frequently perceived by the public as the "voice" of the NRA. Compl. at ¶13.

For several years, the NRA touted NRATV to its members and directors as one of its proudest and most successful projects. Compl. at ¶15. The relationship between AMc and the NRA began to deteriorate in 2018, however, when the NRA retained Brewer Attorneys & Counselors. The Brewer firm's in-house public relations group replaced

AMc as the NRA's public relations/crisis management team and began engaging in a smear campaign against AMc to deflect attention from a civil investigation by the New York State Attorney General into the spending habits of the NRA and its executive director, Wayne LaPierre.  Compl. at ¶¶ 2, 35-39.

Defendant formerly served as the host of a current events program on NRATV called "Stinchfield." Compl. at ¶17.  His show was cancelled in the summer of 2019, when the NRA pulled the plug on NRATV.  Compl. at ¶19.  Defendant then decided to align himself with the NRA and LaPierre and their smear campaign against AMc.  Compl. at ¶19.

To that end, Defendant signed a written statement in December 2019 that contains false allegations regarding AMc, which was sent directly to members of the press. Compl. at ¶¶ 20, 35.  On its face, Defendant's written statement appears to be an "affidavit" filed in connection with an action the NRA filed against AMc in this District (the "***NRA Action***").[2]  But, the so-called affidavit was never filed with any court or other tribunal.  Compl. at ¶35.  Instead, Defendant, together with the public relations group at Brewer Attorneys & Counselors,[3] sent the written statement directly to members of the

---

[2] No. 3:19-cv-02074-G, *National Rifle Association of America, Inc. v. Ackerman McQueen, Inc., et al.* (N.D. Tex.) (filed Aug. 30, 2019).

[3] The Brewer Firm employs an entire division of non-attorney employees who handle public-relations matters, crisis management, and political strategy.  *See* Public Affairs, BREWER ATTORNEYS & COUNSELORS, https://www.brewerattorneys.com/the-art-of-advocacy;  Our People, BREWER ATTORNEYS & COUNSELORS, http://brewerattorneys.com/team-1

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C) – PAGE 3**

press, including reporters at *The Daily Beast* and *Newsweek*, in order to inflict reputational damage on AMc.  Compl. at ¶¶ 35, 38.

On December 19, 2019, *The Daily Beast* ran an article under the headline "NRATV Wanted to Become a 24/7 Newsroom Using NRA Funds: Ex-Host," which included numerous quotes that came directly from Defendant's written statement.  Compl. at ¶36.[4] *Newsweek* ran a similar story the same day that also quoted directly from Defendant's written statement.  Complaint at ¶36.[5]  On December 20, 2019, AMc filed this action against Defendant for defamation and business disparagement arising out of Defendant's false written statement and its publication to the gen.  Compl. at ¶¶ 40-56.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted).  "A motion for judgment on the pleadings under Rule

---

[4] *A*vailable at https://www.thedailybeast.com/nratv-wanted-to-become-a-real-newsroom-using-nra-funds-says-ex-host-grant-stinchfield.

[5] Available at https://www.newsweek.com/nratv-ackerman-mcqueen-nra-guns-1477939.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C) – PAGE 4**

12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

A motion to dismiss under Rule 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id*. at 679.

In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

## ARGUMENT AND AUTHORITIES

A. The Court should deny Defendant's motion to dismiss.

Defendant contends that AMc's claims should be dismissed because Defendant's written statement is protected by the litigation privilege, also known as the judicial

proceedings privilege. AMc has alleged that Defendant's written statement was not executed in a good faith as a legal document to be filed with a court, but rather as a mechanism for feeding false information to the press cloaked with the appearance of legitimacy as an actual court record. Therefore, the litigation privilege does not apply.

### i. The boundaries of the judicial proceedings privilege.

Under the judicial proceedings privilege, communications made in the due course of a judicial proceeding cannot serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case. *Id*. at 916-17.

Despite this broad protection, Texas recognizes limits on the reach of the privilege, particularly when the communications are made outside of judicial proceedings. *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 402 (5th Cir. 2017). When Texas courts have applied the privilege to out-of-court statements, they have done so consistent with the underlying reasoning for the privilege—that the benefit of the communication to the public in facilitating the administration of justice outweighs the potential harm to the individual. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015). However, the privilege "cannot be enlarged into a license to go about in the community and make false

and slanderous charges . . . ." *Levingston Shipbuilding Co. v. Inland West Corp.*, 688 S.W.2d 192, 196 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.); *see also Pisharodi v. Barrash*, 116 S.W.3d 858, 864 (Tex. App.—Corpus Christi 2003, pet. denied); *Knox v. Taylor*, 992 S.W.2d 40, 53 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. Civ. App.—Galveston 1927, no writ).

In *Levingston*, the court addressed the question of whether the defendant, by filing a lawsuit and then arranging to have his petition delivered to the news media, had "stepped out of the umbrella of privilege." *Id*. at 196-97. The court found that it did. *Id*. Although Levingston's petition was privileged when filed, and the privilege extended to the press if they obtained it from the records, the defendant crossed a line by publishing the petition's allegations directly to the media. *Id*. Similarly, in *De Mankowski*, the court held that slanderous statements that were made to various people before and after filing the lawsuit, despite their similarity to allegation in the pleadings on file with the court, could serve as a basis for a defamation. *De Mankowski*, 300 S.W. at 122. Likewise, in *Knox*, the court of appeals held that a nonparty's transmission of a package of materials, which included a three-page memo concerning litigation that contained false information that was not part of the public record, could support a claim for defamation. *Knox*, 992 S.W.2d at 53. And, in *Pisharodi*, the court held that a letter sent to the Department of Labor's claim examiner was covered by the quasi-judicial proceedings privilege, but its republication outside of the quasi-juridical context was not. *Pisharodi*, 116 S.W.3d at 864;

*see also Alaniz v. Hoyt*, 105 S.W.3d 330, 341 (Tex. App.—Corpus Christi 2003, no pet.) (noting that "the absolute privilege is lost if the holder of the privilege repeats the statements outside the protected context within which the statements originally were made").

Furthermore, as the Fifth Circuit has recognized, the circumstances of the third-party recipient and that party's relationship to the litigation are relevant to the analysis. *See BancPass*, 863 F.3d at 404 (holding that defamatory letters to third parties are not protected by the privilege) (citing, among other cases, *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979) ("[The absolute privilege] cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected to the judicial proceeding.")). In *BancPass*, the Fifth Circuit noted that in most jurisdictions, "for a communication to have some relation to a proposed or pending judicial proceeding, 'the recipient of the communications must have a direct interest in the litigation or possess evidentiary information relevant to it.'" *BancPass*, 863 F.3d at 405 (quoting Richmond, 31 Am. J. Trial Advoc. at 320 (quoting *Johnson v. McDonald*, 197 Ariz. 155, 3 P.3d 1075, 1080 (Ct. App. 1999)). Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion because the media does have a direct interest in the litigation or possess evidentiary information relevant to it. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979).

> ### ii. *The judicial proceedings privilege does not apply to Defendant's statement to the media.*

The judicial proceedings privilege does not apply to Defendant's written statement. Although styled as an "affidavit," Defendant's written statement was never filed with any court or other tribunal. Thus, it is not truly the type of court record to which the judicial proceedings privilege applies. Defendant's written statement is instead more akin to the slanderous statements that were made in *De Mankowski*, which were held to be defamation despite their similarity to allegation in the pleadings on file with the court, *De Mankowski*, 300 S.W. at 122, or the three-page memo in *Knox* that contained false information that was not part of the public record. *Knox*, 992 S.W.2d at 53.

That is one of the things that differentiates this case from other cases in which courts have held that the judicial proceedings privilege can apply when an attorney sends pleadings to members of the press.[6] Those cases find their genesis in *Hill v. Herald-Post Publishing Co.*, in which the court observed that "[t]he harm resulting to the defamed party by delivering a copy of the suit or motion in a pending proceeding to the news media could demonstratively be no greater than it would be if the news media reporters

---

[6] The judicial proceedings privilege has been applied to attorneys' statements to the media about actual or potential lawsuits. *See Hill*, 877 S.W.2d *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28-29 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).; *Landry's, Inc. & Houston Aquarium, Inc. v. Animal Legal Del: Fund*, 566 S.W.3d 41, 60 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). AMc's counsel has not found any case in which the judicial proceedings privilege has been applied to a non-party witness's statements to the media about a case.

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C) – PAGE 9**

got a tip from someone or found the pleadings on their own." 877 S.W.2d 774, 783 (Tex. App.—El Paso 1994), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994). Here, in contrast, there was nothing for the news media to find on its own, as the so-called affidavit was not prepared to be filed with a court, but rather as a mechanism for feeding false information to the press.

The decisions in *Hill*, *Daystar Residential*, and *Landry's* are also erroneous because they focus on whether the recipient of the communication, the press, was independently entitled to obtain a copy of the pleading instead of on the press' relationship to the litigation or whether the interests of the underlying litigation were furthered. Neither *The Daily Beast* nor *Newsweek* had a direct interest in any pending litigation or possessed evidentiary information relevant to it, meaning the judicial proceedings privilege does not apply. *BancPass*, 863 F.3d at 405; *Asay*, 594 F.2d at 698.

### iii. *Defendant misinterprets the public policy behind the privilege.*

Defendant's arguments regarding the public policy behind the privilege are misplaced. Upholding the judicial proceedings privilege in this context would not further the goals of the privilege. The subject matter of Defendant's false written statements is a decidedly private matter, despite the NRA's and lawyers' attempts to make it a matter of public concern. Defendant's publication of his written statement to the media was not done in preparation for litigation or before a court during litigation. It was part of a smear campaign designed to inflict reputational injury on AMc. The fact

that a person has a privilege to make defamatory statements before a court does not mean the person is also free to do so to third parties, such as the news media.

Furthermore, contrary to Defendant's arguments, rejecting the judicial proceedings privilege in this context accords with the public policy recognizing the necessity for the judicial proceedings privilege. The public policy behind the application of the absolute privilege to judicial proceedings is that the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation. *James*, 637 S.W.2d at 917. Allowing defamation suits for communications to the news media will not generally inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties. Nonparty witnesses are still free to come forward with facts, but parties and their attorneys are prohibited from conspiring with nonparties to put false statements in so-called affidavits that are never actually filed with the court but instead are sent directly to the media to try sway the "court of public opinion."

Because the law does not support Defendant's argument that his written statement is protected by the judicial proceedings privilege, AMc has stated a valid claim against Defendant. The Court should deny Defendant's motion to dismiss accordingly.

WHEREFORE, PREMISES CONSIDERED, AMc respectfully requests the Court to deny Defendant's motion to dismiss and to grant AMc such other and further relief to which it may be justly entitled.

Dated: October 5, 2020.

        Respectfully submitted,

        /s/ *J. Brian Vanderwoude*
        **Jay J. Madrid, Esq.**
        Texas Bar No. 12802000
        madrid.jay@dorsey.com
        **G. Michael Gruber, Esq.**
        Texas Bar No. 08555400
        gruber.mike@dorsey.com
        **J. Brian Vanderwoude, Esq.**
        Texas Bar No. 24047558
        vanderwoude.brian@dorsey.com
        **Brian E. Mason, Esq.**
        Texas Bar No. 24079906
        mason.brian@dorsey.com

        **DORSEY & WHITNEY LLP**
        300 Crescent Court, Suite 400
        Dallas, Texas 75201
        (214) 981-9900 Phone
        (214) 981-9901 Facsimile

        **ATTORNEYS FOR PLAINTIFF**
        **ACKERMAN MCQUEEN, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

        /s/ *J. Brian Vanderwoude*
        J. Brian Vanderwoude