UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-03016-X |
| | § | |
| GRANT STINCHFIELD, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Bad blood has developed between the National Rifle Association (NRA) and its former communications firm, plaintiff Ackerman McQueen, Inc. (Ackerman). Ackerman produced NRATV, and defendant Grant Stinchfield hosted a show on NRATV. After the NRA/Ackerman breakup occurred, Stinchfield executed an affidavit[1] that included statements Ackerman believed to be defamatory. Ackerman sued Stinchfield. Stinchfield moved to dismiss, claiming the judicial proceeding privilege prevents his affidavit from supporting a defamation suit. For reasons more fully explained below, the Court **DENIES** the motion to dismiss. The Court cannot determine at this earliest stage of the proceeding whether Stinchfield had a good faith belief that he was executing the affidavit for use in a court proceeding (or other permutations of the judicial proceedings privilege).

---

[1] There is some dispute over whether it, in fact, is an affidavit. But both sides refer to it as an affidavit, and any determination of whether it is an affidavit is immaterial to deciding this motion to dismiss. As such, the Court assumes without deciding it is an affidavit for purposes of this order.

1

## I. Factual Background

Ackerman is a public relations firm in Oklahoma. The NRA and Ackerman worked together since the 1980s. Ackerman counted itself as the NRA's "principal communication strategist and crisis manager."[2] And Ackerman claims to have helped with such memorable messaging as Charlton Heston's line: "I'll give you my gun when you pry it from my cold, dead hands."[3]

After Al Gore invented the internet, it enabled the NRA and Ackerman to spawn such projects as the NRA Live webcast, NRA News, the NRA Women network, and ultimately NRATV. The goal of NRATV was to enlist talent to "deliver hard-hitting commentary on Second Amendment and American freedom issues" that would reach millions of viewers and develop more NRA dues-paying members. Stinchfield hosted a current events program on the channel that was appropriately named, "Stinchfield."[4]

According to Ackerman, NRA CEO Wayne LaPierre and Stinchfield really, really liked NRATV and Ackerman. Also according to Ackerman, the NRA ultimately pulled the plug on NRATV in the summer of 2019, citing concerns that programming was straying too far from the group's core mission.[5] Ackerman cited a related case

---

[2] Doc. 1 at 4.

[3] Doc. 1 at 4.

[4] The Court is by no means poking fun at appropriate naming. The Court has long wondered why music videos largely have nothing to do with the songs they accompany.

[5] *See supra* note 4.

before another judge in this district and division, where the NRA sued Ackerman for allegedly misleading it into believing NRA TV was a success when it wasn't.[6]

Stinchfield resigned from Ackerman in October 2019 to work for the NRA. The heart of this lawsuit is about an affidavit Stinchfield signed in December 2019 and allegedly provided to the NRA. In the affidavit, Stinchfield stated that metrics that Ackerman presented to the NRA did not demonstrate how few live viewers NRATV had.

Ackerman claims that the NRA, LaPierre, and Stinchfield engaged in a smear campaign against Ackerman to deflect attention from the New York Attorney General's investigation into LaPierre's spending habits and the NRA's tax-exempt status. The New York Attorney General has since filed a civil suit against the NRA, LaPierre, treasurer Wilson Phillips, the executive director of general operations, and the general counsel.[7] That suit seeks to dissolve the NRA.[8] Ackerman filed this lawsuit, and Stinchfield moved to dismiss.[9]

---

[6] *Nat'l Rifle Ass'n v. Ackerman McQueen, Inc.*, Case No. 3:19-cv-02074-G (N.D. Tex.), at Doc. 18.

[7] Verified Complaint, *New York v. The Nat'l Rifle Ass'n of Am., Inc.*, New York Cty., New York, Index No. 451625/2020 (Aug. 6, 2020), *available at* https://iapps.courts.state.ny.us/nyscef/ DocumentList?docketId=pahf9IBZzF/pYP8WVQ4Sfw==&display=all&courtType=New%20York%20 County%20Supreme%20Court&resultsPageNum=1 (hereinafter "New York AG complaint"). The Wilson Phillips at issue there is an individual, not a group of individuals. *See* Wikipedia, Wilson Phillips, *at* https://en.wikipedia.org/wiki/Wilson_Phillips (last modified Oct. 10, 2020) (chronicling the rise of Carnie Wilson, Wendy Wilson, and Chynna Phillips, the daughters of Brian Wilson of The Beach Boys and of John and Michelle Phillips of The Mamas & the Papas). Nonetheless, the Court doesn't doubt that the NRA wants to hold on for far more than one more day in that dissolution suit.

[8] New York AG complaint at 166.

[9] Nonparty National Rifle Association filed a motion to transfer this action for inclusion in a multidistrict litigation proceeding. That motion, which remains pending, does not divest this Court of jurisdiction. *See* United States Judicial Panel on Multidistrict Litigation, Rule 2.1(d) ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the

3

## II. Legal Background

Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[10]  To survive a motion to dismiss, Stinchfield must allege enough facts "to state a claim to relief that is plausible on its face."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[13]  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[14]

## III. Application

Stinchfield's motion to dismiss claims that the statements in his affidavit are covered by the judicial proceedings privilege.  Ackerman responds that the affidavit was not executed in good faith as a legal document to be filed in court, so the judicial

---

Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.  An order to transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective only upon its filing with the clerk of the transferee district court.").

[10] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[14] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

proceedings privilege does not apply.  Both parties miss the mark a bit.  Without discovery, the Court (or a jury) cannot say whether Stinchfield had or did not have a good faith belief he was executing the affidavit for a court proceeding.  So adjusting for the windage and elevation of a motion to dismiss, the Court must deny the motion as this preliminary stage of the case.

The judicial proceedings privilege prevents communications made in the course of a judicial proceeding from supporting a defamation case, regardless of the negligence or malice with which they are made.[15]  The privilege extends to such pre-trial materials as depositions and affidavits.[16]  The rationale is simple: people might fear telling the truth in a court proceeding if the result would be fending off a subsequent defamation suit.[17]

Determining that Stinchfield had a good faith belief he was executing the affidavit for use in a court proceeding is not possible at this dismissal phase of the lawsuit.  At this phase, the Court must accept Ackerman's well-pled allegations as true—regardless of what Stinchfield thinks of them—when considering Stinchfield's

---

[15] *See James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made.").  The parties both appear to concede that Texas law applies.

[16] *Id*. at 916–17 ("This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case."). A host of other cases are addressed in the motion to dismiss briefing, addressing such issues as distribution of court related statements to the media.  But those cases are not relevant in light of the procedural posture of this case.

[17] *Id*. at 917 ("The administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation.").

motion to dismiss.  Ackerman's relevant allegation is: "the so-called affidavit was not filed with a court of law or other tribunal.  Instead, it was sent directly to the media, and appears to have been created for the sole purpose of disseminating it to the media in order to further defame [Ackerman]."[18]  Accepting this allegation at this stage necessarily means assuming for now that Stinchfield lacked the good faith that that his document would be used in a court of law rather than one of public opinion.  That is not to say this is an adjudication that the privilege does not apply.  The Court simply cannot hold as matter of law and without evidence what Stinchfield's state of mind was when executing the affidavit.

In addition to Stinchfield's good faith, a second aspect of the judicial proceedings privilege is whether the affidavit's distribution to the media negates the privilege.  Ackerman makes much of such an exception to the privilege some courts recognize.  The Court makes no determination at this preliminary stage of what the permutations of this potential exception are for a case such as this.  Here's why: Ackerman's complaint doesn't allege that Stinchfield pulled the trigger.  It only alleges it was done: "Instead, *it was sent* directly to the media, and appears to have been created for the sole purpose of disseminating it to the media in order to further defame [Ackerman]."[19]  Ackerman cannot conclusively defeat the application of the judicial proceedings privilege when it fails to even allege—much less prove—that

---

[18] Doc. 1 at 8.

[19] Doc. 1 at 8 (emphasis added).  Saying, for example, "Kristin Shepard shot J.R." is very different than saying "J.R. was shot."

6

Stinchfield distributed the affidavit to the media.  Any such determination must occur after discovery (at the earliest).

Ackerman's final argument the Court must address comes in a footnote and contends that Stinchfield's affidavit lacks a jurat,[20] rendering it not an affidavit.[21] But the affidavit was executed in Texas.  Stinchfield argues Texas law only requires affidavits to be sworn, not to be sworn before the officer.[22]  More fundamentally, Texas law doesn't even require swearing for a declaration such as this so long as an unsworn declaration is "(1) in writing; and (2) subscribed by the person making the declaration as true under penalty of perjury."[23]  The lack of a jurat is not a basis to exclude the affidavit from the scope of the judicial proceedings privilege at this juncture.

In short, arguments on whether the judicial proceedings privilege applies or not to Stinchfield's affidavit are premature at the motion to dismiss stage.  Discovery must happen before the Court can determine if the privilege applies.

---

[20] Affidavits contain oaths and jurats.  A jurat is a certification with "language showing that the oath was sworn in the notary's presence" and gives the details on when and where it was sworn. *In re Wave Energy, Inc.*, 467 Fed. App'x 248, 251 (5th Cir. 2012).

[21] This is a curious argument for Ackerman to make.  Ackerman did not attach the affidavit to its complaint, yet Ackerman argues it can defeat the motion to dismiss with a page of a document it did not bring before the Court.  In any event, the Court can and will consider documents attached to motions to dismiss (which Stinchfield did) that are referenced in and central to the complaint (and this is).  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (Documents "attache[d] to a motion to dismiss are [also] considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s].").  So the Court can consider Ackerman's jurat argument notwithstanding Ackerman's failure to present the affidavit to the Court with the complaint.

[22] *But see* TEX. GOV'T CODE § 312.011(1) ("'Affidavit' means a statement in writing of a fact or facts signed by the party making it, *sworn to before an officer authorized to administer oaths*, and officially certified to by the officer under his seal of office." (emphasis added)).

[23] TEX. CIV. PRAC. & REM. CODE § 132.001(c).

## IV. Conclusion

For the above reasons, the Court **DENIES** Stinchfield's motion to dismiss.

**IT IS SO ORDERED** this 6th day of November, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE