IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-3016-X |
| | § | |
| GRANT STINCHFIELD, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

Plaintiff Ackerman McQueen, Inc. ("Ackerman" or "AMc") has filed a Motion to Compel, *see* Dkt. No. 21 (the "MTC"), in which it "asks the Court to compel Defendant, Grant Stinchfield, to answer an interrogatory and produce certain documents in response to AMc's written discovery requests," *id.* at 1.

Ackerman, more specifically, requests that the Court "1. Overrule Stinchfield's objections based on undue burden and overbreadth: Interrogatory No. 11, [Request for Production ("RFP")] Nos. 2-4; 2. Overrule Stinchfield's objections based on the attorney-client privilege and work product doctrine: RFP Nos. 2-4; 3. Overrule Stinchfield's relevance objections: RFP Nos. 17-19; [and] 4. Compel complete production of the requested documents and information within 10 days of

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

this Court's Order." *Id.* at 1-2; *see also* Dkt. No. 22 (brief in support). Ackerman further contends that "Stinchfield might attempt to create a revisionist history of the time period before, during, and after the execution of his written statement by arguing, for example, that he anticipated that he would be sued by AMc as a result of the statement and that he began seeking legal advice from the Brewer Firm from day one" and requests that, if Stinchfield does so "in response to this Motion, … that the Court compel Stinchfield to produce a privilege log for all documents for which he claims a privilege" and "order an *in camera* inspection of these documents and communications so the merits of Stinchfield's privilege claims may be fairly adjudicated." Dkt. No. 22 at 17.

United States District Judge Brantley Starr has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 24.

Stinchfiled responded to the MTC, *see* Dkt. No. 28; *see also* Dkt. No. 29 (brief in support), but Ackerman has not filed a reply, and its deadline in which to do so has passed, *see* N.D. TEX. L. CIV. R. 7.1(f).

## Background

The parties are familiar with the background of this case, and Judge Starr very recently recounted it when denying Stinchfield's motion to dismiss. *See* Dkt. No. 37 at 1-4. So the Court will not repeat it here and will instead focus on the background of disputed discovery requests and responses.

As to the discovery requests at issues, Ackerman explains as follows:

5. On January 10, 2020, AMc served its First Set of Interrogatories and First Request for Production on Stinchfield. The discovery requests primarily focused on Stinchfield's and the Brewer Firm's creation and public dissemination of Stinchfield's written statement, as well as Stinchfield's net worth. On February 10, 2020, Stinchfield served his responses to AMc's discovery requests ("Defendant's Response"), a true and correct copy of which is included in the Appendix at App. 9-13.

6. This dispute concerns the following discovery requests:

i. Interrogatory No. 11 – This interrogatory asks Stinchfield to identify all persons to whom he or his counsel disseminated Stinchfield's written statement. Appendix at App. 17. Stinchfield has indicated that he intends to amend his response and answer this interrogatory, but has not done so yet.

ii. Request for Production ("RFP") No. 2 – This request seeks all drafts and prior versions of the Stinchfield's written statement. Appendix at App. 20. The identification number on the bottom of Stinchfield's statement indicates that it is the eighth version of the so-called affidavit. *See* Appendix at pp. 6-8 (displaying document number "482306952-0046, v. 8").

iii. RFP No. 3 – This request seeks all communication between Stinchfield and any member of the Brewer Firm that occurred prior to Stinchfield's retention of the Brewer Firm and/or the Brewer Storefront as counsel. Appendix at App. 21.

iv. RFP No. 4 - This request seeks production of communications between Stinchfield and any non-attorney employee in the Brewer Firm's public-relations group. *Id.*

v. RFP Nos. 17-19 – These requests seek information related to Stinchfield's net worth, including tax returns, checking, savings, and brokerage account statements, and personal financial statements. Appendix at App. 26-27. AMc is seeking exemplary damages in this case. Compl. at ¶58.c.

Dkt. No. 22 at 3-4 (footnotes omitted). Ackerman asserts that, "[b]ecause Stinchfield's objections to these discovery requests are improper, the Court should overrule them and compel Stinchfield to properly respond to each of the requests." *Id.* at 4.

Stinchfield responds, explaining that, "[a]lthough Stinchfield argues that his affidavit is protected by the litigation privilege doctrine, the parties have begun limited discovery." Dkt. No. 29 at 2. Judge Starr has now denied that motion to dismiss, explaining that "arguments on whether the judicial proceedings privilege applies or not to Stinchfield's affidavit are premature at the motion to dismiss stage" and that "[d]iscovery must happen before the Court can determine if the privilege applies." Dkt. No. 37 at 7.

But, even without the benefit of that ruling, Stinchfield responds to the MTC by explaining:

> On January 10, 2020, AMc served Stinchfield with its first set of requests for production and its first set of Interrogatories, ("Requests").
> On February 10, 2020, Stinchfield served his answers to the Requests, asserting proper objections.
> On March 10, 2020, Stinchfield and AMc met and conferred regarding the Requests.
> During the meet and confer, Stinchfield agreed to produce non-privileged documents that were responsive to AMc's Requests. Stinchfield produced documents that same day.
> On September 22, 2020, AMc inquired further into information it sought from Stinchfield. Its inquiry pertained to seven of its discovery requests: Requests for Production 2-4, 17-19 and Interrogatory Number 11. Stinchfield agreed to supplement his answers to specific discovery requests and stated that he would withhold documents based on privilege. On the same day, AMc filed this motion to compel. AMc did not give Stinchfield time to produce a privilege log or serve his supplemental answers as Stinchfield stated he would during the meet and confer.
> On September 28, 2020, Stinchfield served AMc with his supplemental answers to AMc's Interrogatory number 11 and Request for Production number 4, 9 which fully resolved any issues pertaining to these specific discovery requests.

Dkt. No. 29 at 2-3 (footnotes omitted).

-4-

Stinchfield contends that he "withheld documents based on the proper assertion of the work product and common interest privileges" and that the Court should therefore deny Ackerman's MTC and award Stinchfield his reasonable attorneys' fees in connection with this motion. *Id.* at 3.

## Legal Standards

The Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and those standards are incorporated, but will not be repeated, here, including as to the general standards governing attorney work product as well as attorney-client privilege under Texas law. *See Zenith Ins. Co. v. Texas Institute for Surgery, L.L.P.*, 328 F.R.D. 153, 162-163 (N.D. Tex. 2018); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018); *Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 595-96 (N.D. Tex. 2017).

As a threshold matter, although this is a diversity case in which the parties agree that Texas substantive law applies, the issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law in diversity cases, such as this, because work product is not a substantive privilege within the meaning of Federal Rule of Evidence 501. *See Zenith Ins.*, 328 F.R.D. at 162. Stinchfield, as the responding party seeking to withhold responsive documents or materials, has the burden of demonstrating that the work-product doctrine applies:

> Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure. In fact, resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.

*Id.* (citation and internal quotation marks omitted).

And federal common law governs the common interest doctrine's application to any work product protection. *See Windsor v. Olson*, No. 3:16-cv-934-L, 2019 WL 77228, at *7 (N.D. Tex. Jan. 2, 2019). As this Court has previously explained,

> [r]epresentations involving multiple clients with separate counsel call for the application of what have been called the joint-defense or common-interest doctrine. The joint-defense or common-interest doctrine extends certain privileges, typically the attorney-client privilege and work product protection, to documents that are prepared by parties sharing a common litigation interest that would otherwise not enjoy such privilege. *See FTC v. Think All Publishing, L.L.C.*, No. 4:07-cv-011, 2008 WL 687456, at *1 (E.D. Tex. Mar.11, 2008) (citing *Ferko v. NASCAR*, 219 F.R.D. 396, 401 (E.D. Tex. 2003)). "Thus, while the attorney-client and work product privileges are typically waived upon disclosure to a third party, where that third party 'share[s] a common legal interest' with the producing entity, such production does not waive either privilege." *Id.* (quoting *Ferko*, 219 F.R.D. at 401).
> The joint-defense or common-interest doctrine applies under federal common law in the Fifth Circuit to "(1) communications between co-defendants in actual litigation and their counsel and (2) communications between potential co-defendants and their counsel."

> [*In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)] (internal citations omitted). The joint-defense or common-interest doctrine "extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and intended to facilitate representation between potential co-defendants with a common legal interest and their counsel." *Autobytel, Inc. v. Dealix Corp.*, 455 F. Supp. 2d 569, 576 (E.D. Tex. 2006) (citing *Santa Fe*, 272 F.3d at 710-11). The doctrine "exists to protect communications between two parties or attorneys that share a common legal interest," and, "[f]or example, courts have found that co-defendants, an insurer and an insured, and a patentee and a licensee share a common legal interest." *Ferko v. NASCAR*, 219 F.R.D. 403, 406 (E.D. Tex. 2003). But the "doctrine is to be narrowly construed because, although policy considerations support its use in some circumstances, it is 'an obstacle to truth seeking.'" *Think All Publishing*, 2008 WL 687456, at *1. For communications between potential co-parties to be covered by the doctrine, "there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another ... could qualify for protection." *Santa Fe*, 272 F.3d at 711.

*Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2013 WL 6814789, at *2 (N.D. Tex. Dec. 26, 2013).

The United States Court of Appeals for the Fifth Circuit has more recently explained in an unpublished opinion that

> this court has not expressly held that the privilege is inapplicable to co-plaintiffs. Several courts – including lower courts in this circuit – have held that the privilege extends to co-plaintiffs in litigation.
>
> But we need not reach this issue. Even if we were to conclude that the common legal interest privilege extends to some communications between Morgan Stanley and Safeguard's counsel, the privilege does not apply to the remaining communication at issue. Communications may be protected by the common legal interest privilege only if those communications "'further a joint or common interest.'" *In re Santa Fe Int'l Corp.*, 272 F.3d at 711-12 (quoting *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993)) (emphasis added).... We have reviewed the parties' summaries

of the remaining communication, and we conclude that it was not made in furtherance of (but rather is diametrically opposed to) the prosecution of the Insurance Litigation. As such, the common legal interest privilege does not apply to this communication.

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 703-04 (5th Cir. 2015) (citations, emphasis, and footnotes omitted). But the Fifth Circuit also noted that, "[e]ven if the common legal interest privilege extends to plaintiffs, we also question whether the privilege could apply to any of the communications between Morgan Stanley and Safeguard, which were not 'co-plaintiffs' in the Insurance Litigation (Safeguard was the sole plaintiff)" and that, "[a]lthough Morgan Stanley had some interest in the litigation due to its interest in Safeguard (via PPF), such an interest may be insufficient to give rise to the privilege." *Id.* at 704 n.20; *accord Windsor*, 2019 WL 77228, at *10 ("Even assuming that the federal common law common interest doctrine extends to communications between counsel for these plaintiffs in separate actions, Windsor has not met his burden to show or explain how each communication was made to further a joint or common interest that he shared with Mark or Tammy Smith.").

Stinchfield, here too, bears the burden of demonstrating any common interest doctrine's applicability to any withheld communications or documents. *See Santa Fe*, 272 F.3d at 710.

And, as to waiver of work product protection, the Court has previously explained that

[t]he work-product doctrine is very different from the attorney-client privilege with regard to possible waiver. Although the attorney-client

privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work-product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* That is, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). But such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks omitted). And, for example, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382.

   "Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." [*S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006)]; *accord Ecuadorian Plaintiffs*, 619 F.3d at 379 & n.10 (party asserting work-product protection is not required to prove non-waiver). "If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed." *Brady*, 238 F.R.D. at 444.

   "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles*, 422 U.S. 225, 239 n.14, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975).

*Mir v. L-3 Comm'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016).

## Analysis

## I.   RFP No. 2

RFP No. 2 seeks "[a]ll drafts or prior versions of your affidavit."

Ackerman notes in its opening brief that "[t]he identification number on the

bottom of Stinchfield's statement indicates that it is the eighth version of the

so-called affidavit" and further explains that "[t]his request calls for the production of versions one through seven." Dkt. No. 22 at 4, 6-7.

Ackerman explains that "Stinchfield objects that the request is 'unduly broad and overly burdensome since it requires production of 'all documents," which [] makes no sense in this context," where "[p]roducing seven documents is not unduly burdensome" and "[t]he drafts of the written statement, coupled with the communications requested in RFP Nos. 3 and 4 discussed below, will enable AMc to test Stinchfield's perception and credibility, as they will show what changes were made in the seven prior iterations of the written statement, why, and at whose request," and so "are relevant and ought to be produced." *Id.* at 7.

Ackerman also asks the Court to overrule Stinchfield's attorney-client privilege and work product objections to RFP 2, as to which Ackerman contends:

> RFP No. 2 seeks production of all drafts of Stinchfield's written statement. Neither the work product doctrine nor the attorney-client privilege applies.
>     Stinchfield's so-called affidavit is no different than any other witness statement or questionnaire that purports to set out the underlying facts of the lawsuit. It should therefore be devoid of any legal strategy or attorney mental impressions that would otherwise be protected by the work-product privilege. *See Walker*, 2008 U.S. Dist. LEXIS 81919, at *17-19; *Infosystems, Inc.*, 197 F.R.D. at 306-07. The attorney-client privilege does not apply because Stinchfield's written statement was not a confidential communication with an attorney for the purpose of securing legal advice. Moreover, this document was created and executed before an attorney-client relationship began between Stinchfield and his current counsel, further precluding application of the attorney-client privilege per the cases cited above.

Dkt. No. 22 at 14-15.

Stinchfield responds that

-10-

AMc seeks drafts of Stinchfield's affidavit, which were prepared during an ongoing litigation between the NRA and AMc. Stinchfield properly objected to this request – and withheld documents responsive to it – because the information is protected by the work product privilege. AMc's challenge to Stinchfield's assertion of privilege is meritless.

Courts within this circuit hold that after a party properly establishes the work product privilege, the party that seeks discovery bears the burden to demonstrate waiver of work product. In general, there are three distinct grounds on which a party may be entitled to the production of work product: (1) disclosure to a third party, (2) where the party asserting the work product places the material "at issue," and (3) "substantial need for the materials to prepare its case without undue hardship." AMc failed to establish any of these three grounds to waive Stinchfield's work product privilege.

First, there has been no disclosure to the third party. In December of 2019 a few months after the NRA initiated a lawsuit against AMc in the Northern District of Texas, Stinchfield – a former host of NRA TV – approached Brewer with factual knowledge regarding AMc's operation. After meeting with Brewer, Stinchfield supplied an affidavit to Brewer in connection with the NRA's litigation against AMc. As the NRA's counsel, Brewer provided its mental impressions and opinions to Stinchfield's affidavit in preparation for the litigation against AMc. The drafts were kept confidential and only circulated within Brewer.

Second, AMc fails to establish that withholding these documents are placing the material at issue. To place work product at issue in litigation, courts hold that a party must "rely on" the work product "to prove its claims in the case." Stinchfield does not intend to affirmatively rely on privileged communications to support its claim or defense. Instead, Stinchfield argues that AMc's claims against him are barred by the ligation privilege doctrine and that his testimony is true.

Third, AMc has not proven that there is a substantial need for the drafts of Stinchfield's affidavit. Because of the nature of AMc's claims for defamation and business disparagement, AMc fails to establish that without these drafts they will be unable to prepare its claims. There is not a substantial need for the drafts of Stinchfield's affidavit nor is AMc injured in anyway if they do not receive the drafts.

Therefore, AMc's request to compel Stinchfield to produce documents responsive to request for production number 2 should be denied.

Dkt. No. 29 at 4-6 (footnotes omitted).

Stinchfield does not attempt to defend withholding the drafts of his affidavit or written statement based on the attorney-client privilege. And Stinchfield has not attempted to justify or press his undue burden or overbreadth objections in response to the MTC, and those objections are therefore waived or, in any event, overruled for failure to support them. *See Lopez*, 327 F.R.D. at 583.

As for work product protection, Ackerman's argument, read in isolation, suggests that that protection extends only to materials that reveal legal strategy or attorney mental impressions. But materials reflecting attorney opinion work-product are only subject to additional protections against disclosure under Federal Rule of Civil Procedure 26(b)(3)(B). The doctrine more generally "provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative 'in anticipation of litigation or for trial,'" and "[a] document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection," "[b]ut the primary motivating purpose behind the creation of the document must be to aid in possible future litigation." *Zenith*, 328 F.R.D. at 162 (internal quotation marks omitted).

But Stinchfield has met not his burden to establish the protection's prerequisites as to the drafts of his affidavit or written statement submitted in connection with a separate case. Even assuming these materials prepared in connection for another case – the dissemination of the final, signed version of which forms the basis for the claims in this case – could be protected under Rule 26(b)(3) from disclosure in this case, *but see generally* Wright, Miller, & Marcus, FED. PRAC.

-12-

& PROC.: Civil 2d § 2024, Stinchfield's brief does not attempt to explain how he has met his burden to show each draft is protected from disclosure in this case as attorney work product under Rule 26(b)(3), *see* Dkt. No. 29 at 4 ("AMc seeks drafts of Stinchfield's affidavit, which were prepared during an ongoing litigation between the NRA and AMc. Stinchfield properly objected to this request – and withheld documents responsive to it – because the information is protected by the work product privilege. AMc's challenge to Stinchfield's assertion of privilege is meritless."); Dkt. No. 30-6 ("After my meeting with Brewer, I supplied the factual testimony to Brewer and signed an affidavit that explained my view on NRA TV's viewership numbers.").

Stinchfield does submit an affidavit from one of the NRA's attorneys who suggests that some portion of some draft of Stinchfield's affidavit includes her substantive revisions that reflect "mental impressions, legal theories, and litigation-strategy outlook with respect to both the NRA-Ackerman Lawsuits and several Other NRA Matters." Dkt. No. 30-7. But that alone does not meet the burden to show that the draft affidavits or written statements on the whole qualify for work product protection in this case.

Stinchfield has not established that drafts of his affidavit or written statement qualify for protection under Rule 26(b)(3). But, consistent with the Court's obligation under Rule 26(b)(3)(B), Stinchfield may be able to properly redact certain materials in those documents to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the

litigation. If he does so, he must also properly support withholding (through redaction) those portions of the documents in compliance with Federal Rule of Civil Procedure 26(b)(5).

The Court grants in part the MTC as to RFP No. 2, overrules Stinchfield's objections to RFP No. 2 except to the limited extent explained above under Rule 26(b)(3)(B), and orders Stinchfield to, by **January 13, 2021**, serve an amended response to, and, produce all previously unproduced, responsive documents in Stinchfield's possession, custody, or control in response to, RFP No. 2 in compliance with Federal Rules of Civil Procedure 26(b)(5)'s and 34(b)'s requirements.

## II.  <u>RFP No. 3</u>

RFP No. 3 seeks "[a]ll documents and communications exchanged between you and Brewer concerning your affidavit that pre-date your retention of Brewer as counsel in this lawsuit. For point of reference, you represented to the undersigned on January 2, 2020, that you had not yet retained counsel."

Ackerman explains in its opening brief that "[t]his request seeks all communication between Stinchfield and any member of the Brewer Firm that occurred prior to Stinchfield's retention of the Brewer Firm and/or the Brewer Storefront as counsel" and notes that "Defendant's answer was signed by William A. Brewer III on behalf of the Brewer Firm" but that, "[s]ince then, Defendant's pleadings, discovery requests, discovery responses, etc. have been signed by Ian Shaw on behalf of Brewer Storefront, PLLC, the self-professed pro bono arm of the Brewer Firm." Dkt. No. 22 at 4 & n.10.

-14-

Stinchfield has objected that this request is unduly burdensome and overly broad, but Ackerman asserts that these objections should be overruled where "Stinchfield signed the written statement on or about December 10, 2019" and, "[p]resumably there were some communications that took place before then given that it is the eighth version of the written statement," and where "[i]t seems unlikely that the volume of communications could have possibly risen to the level of being 'unduly burdensome' to produce in only a few weeks." *Id.* at 7.

Ackerman also asks the Court to overrule Stinchfield's attorney-client privilege and work product objections to RFP 3, as to which Ackerman contends:

> RFP No. 3 seeks production of all communications between Stinchfield and the Brewer Firm concerning Stinchfield's written statement that pre-date Stinchfield's retention of the Brewer Firm or the Brewer Storefront as his counsel in this action. Stinchfield executed his so-called affidavit on December 10, 2019. AMc filed suit against Defendant on December 20, 2019, which is presumably the first date that Stinchfield became aware that he even needed representation. [*See* Doc. 1, Pl.'s Original Compl.] Yet even as of January 2, 2020, Stinchfield firmly maintained that he had not yet hired a lawyer and wanted to try to resolve matters himself. *See* Appendix at App. 4-5. Accordingly, any communications that occurred prior to the date Stinchfield approached the Brewer Firm about representing him in this matter were simply the Brewer Firm's communications with a third-party witness – communications that are not afforded protection under the attorney-client privilege. *See Blum*, 2003 U.S. Dist. LEXIS 2499, at *5.
>
> Likewise, these communications should not protected by the work-product doctrine because they theoretically should relate solely to the underlying facts stated in Stinchfield's affidavit, and any attempt by counsel to "put words in the mouth" of Stinchfield would not be protected by the work-product privilege. *See Infosystems*, 197 F.R.D. at 306-07; *see also Walker*, 2008 U.S. Dist. LEXIS 81919, at *17-19. AMc is thus entitled to theses communications.

Dkt. No. 22 at 15-16 (footnote omitted).

-15-

Stinchfield responds that

AMc's request for production number 3 is protected by the common interest privilege. Stinchfield and the NRA share a common issue, which pertain to the AMc's operation: NRA TV's viewership numbers were distorted, and as a result both Stinchfield and the NRA suffered injury.

In *Aiken v. Texas Farm Bureau Mutual Insurance Co.*, the court explained that: "common interest privilege encompasses shared communications between various co-defendants, actual or potential, and their attorneys, prompted by threatened or actual, civil or criminal proceedings, to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings, or whenever the communication was made in order to facilitate the rendition of legal services to each of the clients involved in the conference."

Here, when Stinchfield – as a former employee of AMc – approached Brewer as a witness, he supplied factual testimony in connection with NRA's dispute against AMc. Both Stinchfield and the NRA had common issues with AMc regarding its distorted NRATV viewership numbers.

Although he felt an obligation to the NRA to reveal his knowledge by supplying an affidavit, Stinchfield believed an imminent lawsuit by AMc would be filed against him. Only eight days after AMc received Stinchfield's affidavit with the NRA's Second Set of Request for Admissions, AMc filed this lawsuit.

From the outset, the NRA and Stinchfield shared common issues and interests: establishing that AMc had deceived the NRA and provided distorted NRA TV viewership analytics, and the information shared was intended to facilitate representation in possible subsequent proceedings.

Therefore, AMc's request to compel Stinchfield to produce documents responsive to request for production number three should be denied.

Dkt. No. 29 at 6-7 (footnotes omitted).

Stinchfield has not met his burden to extend the attorney-client privilege or work product protection to his pre-litigation, pre-hiring communications with the Brewer firm. The common interest that he identifies is not the sort of common

-16-

litigation interest between actual or potential co-defendants that the doctrines cover. And Stinchfield cannot show a palpable threat of litigation at the time of the communications in which he voluntarily engaged to produce a witness statement by pointing to possible litigation that might result from disclosure of that witness statement. Further, Stinchfield has not attempted to justify or press his undue burden or overbreadth objections in response to the MTC, and those objections are therefore waived or, in any event, overruled for failure to support them. *See Lopez*, 327 F.R.D. at 583.

The Court grants the MTC as to RFP No. 3, overrules Stinchfield's objections to RFP No. 3, and orders Stinchfield to, by **January 13, 2021**, serve an amended response – without objections – to, and, produce all previously unproduced, responsive documents in Stinchfield's possession, custody, or control in response to, RFP No. 3 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## III.    <u>RFP No. 4</u>

RFP No. 4 seeks "[a]ll documents and communications between you and the public relations, crisis management, and political strategies group at Brewer concerning your affidavit."

Ackerman explains in its opening brief that Stinchfield has objected that this request is unduly burdensome and overly broad, but Ackerman asserts that these objections should be overruled where Stinchfield cannot meet his burden to show that this request is overly broad, burdensome, or oppressive and where "he has failed to comply with Rule 34 by failing to indicate what responsive materials, if

any, are being withheld on the basis of his objections." Dkt. No. 22 at 6. According to Ackerman, "[t]he written statement is plainly at issue in this action and, therefore, the request is not overly broad. With regard to the alleged burdensomeness of the request, it is unlikely that the number of documents and communications he exchanged with the public-relations division at the Brewer Firm could reach the requisite amount to constitute an undue burden in such a short time." *Id.* at 8.

Ackerman also asks the Court to overrule Stinchfield's attorney-client privilege and work product objections to RFP 4, as to which Ackerman contends:

> These communications are highly relevant. As Stinchfield's written statement was provided to the media soon after its execution, exchanges between Stinchfield and the public-relations group are likely to reveal the level of knowledge and intent that both Stinchfield and his counsel had regarding the intended use of the written statement and the manner and method in which it would be disseminated publicly. These communications are not protected by the attorney-client privilege because, as the Public Affairs group employs only non-lawyers who are not subordinates of any lawyers in a legal capacity (as distinguished from, say, legal assistants or paralegals), these individuals are not involved with the provision of legal services, and therefore, any communications could not possibly be for the purpose of obtaining or providing legal advice. *See Kelly*, 569 F.2d at 938; *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 807; *Calvin Klein*, 198 F.R.D. at 55.
>
> These communications with non-lawyer public-relations employees are not protected by the work-product doctrine for the same reason. These non-lawyer employees simply do not – and cannot – engage in the type of legal strategy and other attorney mental processes that fall within this privilege. *See Nobles*, 422 U.S. at 237-38. Furthermore, the services they provided in this particular instance – assisting Stinchfield in disseminating a defamatory press release under the guise of a court document – were ordinary public relations services unrelated to any attorney's mental process. *Calvin Klein*, 198 F.R.D. at 54-55 (PR firm's making calls to various media to comment on developments in the litigation and "finding friendly reporters" were ordinary public relations advice not protected by attorney-client

-18-

privilege or work product doctrine, even if also helpful to attorney in formulating legal strategy); *see also* Fed. R. Civ. P. 26(b)(2)(A).

Dkt. No. 22 at 16-17.

Stinchfield responds that he, on September 28, 2020, "supplied AMc with his supplemental answers that properly and adequately answered AMc's Request for Production number 4"; that he "does not have any documents in his possession responsive to this request"; and that the Court "should deny AMc's request to compel Stinchfield to answer AMc's Request for Production number 4." Dkt. No. 29 at 7.

Stinchfield's supplemental answer and objections includes only an objection that this RFP "is overly broad since it requires the production of '[a]ll documents' no matter how tangential they may be to issues in this case" but then answers, without qualification, that Stinchfield "does not have any documents responsive to Request Number 4." Dkt. No. 30-5 at 4.

Based on this supplemental answer, the Court denies the MTC as to RFP No. 4.

IV.   <u>RFP Nos. 17-19</u>

RFP No. 17 seeks "[y]our federal and state income tax returns, including schedules, for the years 2018 to the present." RFP No. 18 seeks "[a]ll monthly or other periodic statements from January 1, 2019, to the present for all checking, savings, and investment accounts held by you, in whole or in part." And RFP No. 19

seeks "[a]ny and all personal financial statements reflecting your assets and liabilities at any time from January 1, 2018, to the present."

Ackerman explains in its opening brief that

[t]hese requests seek information related to Stinchfield's personal net worth, including tax returns, bank accounts, and financial statements. Stinchfield objects that this request is "unduly burdensome and overbroad" due to his assertion that this information is irrelevant. AMc is seeking exemplary damages in this case, making Stinchfield's financial condition and net worth relevant. *See Hanan v. Crete Carrier Corp.*, No. 3:19-cv-149-B, 2019 U.S. Dist. LEXIS 193409, at *22 (N.D. Tex. Nov. 6, 2019) (permitting discovery concerning net worth as being relevant and proportional to the needs of the case given the plaintiff's claim for exemplary damages); *Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 U.S. Dist. LEXIS 121536, 2014 WL 4262036, at *2 (N.D. Tex. Aug. 29, 2014) ("A defendant's net worth is relevant in a suit involving exemplary damages."). Thus, the request is not overly broad.

Dkt. No. 22 at 8.

Stinchfield responds that "[n]umerous courts have held that because tax returns are 'highly sensitive documents,' their discovery requires that the requesting party demonstrate both: (1) that the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery such as depositions or sworn interrogatory answers." Dkt. No. 29 at 8 (footnote omitted). According to Stinchfield, "AMc has not provided a compelling need for Stinchfield's highly sensitive documents," where, "[i]n order to demonstrate a compelling need for the disclosure of tax returns, a party must show that it has attempted to obtain

-20-

the requested information through the use of less intrusive forms of discovery, and AMc has failed to do so," and where "AMc has not cited to any case law that explains to the court its compelling need for Stinchfield's personal financial information." *Id.* (footnotes omitted). "Instead AMc has sent one request for production and now has filed the motion to compel." *Id.*

As the Court has previously explained, "[t]ax returns are neither privileged nor undiscoverable," but "[t]hey do, however, contain sensitive information and should be produced only after a showing of relevance by the party seeking production, after which the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained." *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587 (N.D. Tex. 2016) (internal quotation marks omitted). Here, Ackerman has explained why discovery of information related to Stinchfield's personal net worth, including tax returns, bank accounts, and financial statements, is relevant, and Stinchfield has not shown otherwise or shown that other sources exist from which the information contained in these documents may be readily obtained.

The Court grants the MTC as to RFP Nos. 17-19, overrules Stinchfield's objections to these requests, and orders Stinchfield to, by **January 13, 2021**, serve an amended response – without objections – to, and, produce all previously unproduced, responsive documents in Stinchfield's possession, custody, or control in response to, RFP Nos. 17, 18, and 19 in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## V.    Interrogatory No. 11

Interrogatory No. 11 asks Stinchfield to "Please identify all persons to whom you disseminated the affidavit."

Ackerman explains in its opening brief that "Stinchfield has indicated that he intends to amend his response and answer this interrogatory, but has not done so yet." Dkt. No. 22 at 3. Ackerman also notes that "Stinchfield has objected to this interrogatory as 'unduly broad and overly burdensome since it requires identification of 'all documents,' which is nonsensical on its face – the interrogatory does not even ask for identification of documents," and Ackerman asserts that "the objection should be overruled." *Id.* at 6.

In response to the MTC, Stinchfield explains that, "[o]n September 28, 2020, [he] served AMc with his supplemental answer[] to AMc's Interrogatory number 11," "which fully resolved any issues pertaining to th[is] specific discovery request[]." Dkt. No. 29 at 3; *see also id.* at 4, 9. Stinchfield asserts that "the court should deny AMc's request to compel Stinchfield to answer AMc's Interrogatory number 11." *Id.* at 9.

The Court agrees. Although Stinchfield's effort to incorporate his general objections is invalid, *see Heller v. City of Dallas*, 303 F.R.D. 466, 483-84 (N.D. Tex. 2014); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 591-92 (N.D. Tex. 2018), Stinchfield appears to have now fully answered the interrogatory, *see* Dkt. No. 30-5 at 3.

The Court denies the MTC as to Interrogatory No. 11.

-22-

**VI.**   **Award of expenses**

Under Federal Rule of Civil Procedure 37(a)(5)(C), the Court determines that, considering all of the circumstances here and the Court's rulings above as to the discovery requests at issue, the parties will bear their own expenses, including attorneys' fees, in connection with the MTC.

### Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Ackerman's Motion to Compel [Dkt. No. 21].

SO ORDERED.

DATED: December 22, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE